315 So.2d 646 (1975)
STATE of Louisiana
v.
Jessie WILSON.
No. 55839.
Supreme Court of Louisiana.
June 23, 1975.
*647 J. W. Seibert, III, H. A. Taliaferro, Sr., Smith, Taliaferro, Seibert & Boothe, Jonesville, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., W. C. Falkenheiner, Dist. Atty., George Griffing, Asst. Dist. Atty., for plaintiff-appellee.
MARCUS, Justice.
Jessie Wilson was indicted for the crime of first degree murder in violation of R.S. 14:30. After trial by jury, he was found guilty as charged and subsequently sentenced to death. Defendant appeals to this court, relying on three assignments of error for reversal of his conviction and sentence.
Defendant is charged with the murder of Agnes Hutchinson committed on November 30, 1973. The victim, an eighty-year old woman who lived alone, had accused defendant of stealing pecans from trees on her property. Following this accusation, defendant later returned to her home and there shot her with a .22 caliber rifle. On the night of the shooting, defendant took a.32 revolver belonging to the deceased.

ASSIGNMENT OF ERROR NO. 1
The manner of selection of the grand and petit jury venires for grand and petit jury service was attacked by defendant in both a motion to quash filed prior to trial and in a motion in arrest of judgment.[1] The exemption of women from jury service, who had not filed a declaration of their desire to serve,[2] at the time of this 1974 trial is claimed by defendant to have violated his constitutional guarantees of due process and equal protection as so held in Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975).
The Taylor decision was rendered January 21, 1975, after defendant's conviction. The United States Supreme Court determined in Daniel v. Louisiana, 420 U.S. 31, *648 95 S.Ct. 704, 42 L.Ed.2d 790 (1975) that the Taylor ruling is not to be applied retroactively, as a matter of federal law, to convictions obtained by juries impaneled prior to the date of the Taylor decision. This court has held that, consonant with Daniel, the Taylor ruling would not be applied retroactively. State v. Rester, 309 So.2d 321 (La.1975); State v. Devore, 309 So.2d 325 (La.1975); State v. Nicholas, 312 So.2d 856 (La.1975).

ASSIGNMENT OF ERROR NO. 2
Defendant contends that the court erred in admitting testimony of his incriminating statements relating to the .32 caliber pistol, as well as allowing the introduction of the gun into evidence. Information of the location of this pistol had been allegedly obtained during defendant's interrogation by the police without his being properly informed of his constitutional rights as required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Following the interrogation, the officers obtained a search warrant. The pistol was found hidden on the premises of defendant's grandmother's home in the exact location given by him.
The contention is without merit. The record shows that defendant was arrested on November 30, 1973 and was immediately given his Miranda warnings. He was taken to Harrisonburg and placed in jail. Prior to interrogation that night, he was again advised of his constitutional rights. It was then that defendant admitted he owned a .22 caliber rifle and informed the police officers as to its location. The next day (December 1) defendant gave a full statement as to his involvement in the homicide the night before, after having been advised of his constitutional rights. Defendant was then taken to the Vidalia sheriff's office where he made a video-recorded statement. Prior to making this statement, he was again fully informed of his constitutional rights, and he also signed a waiver of rights form.
On December 4, defendant made another statement at the sheriff's office in Jena. Defendant was advised of his Miranda rights, and he waived same. It was at this time that defendant advised the police officers that he had taken the .32 caliber pistol from Mrs. Hutchinson's house on the night of the shooting and informed them as to its location. A search warrant was obtained, and the gun was recovered from the location given by defendant. At this point in the trial, defendant objected to the testimony relating to his admissions concerning the .32 caliber pistol and also to its introduction into evidence as being the "fruit of the poisonous tree."
First, the incriminating statements made by the defendant relative to the .32 caliber pistol were clearly admissible. He had been fully advised of his constitutional rights and had waived same prior to making these statements. Having reached this conclusion, the argument that the pistol should be excluded from evidence as being "fruit of the poisonous tree" falls without requiring further consideration.
It is additionally alleged that defendant was denied his constitutional rights to counsel by the failure of the state to provide him an attorney immediately upon his apprehension to represent him during the entire investigation. As stated previously, defendant was given proper warning of his constitutionally-protected rights and waived same unequivocally at each critical stage of the proceedings during the investigation. Furthermore, the minutes reflect that on December 3, 1973 (four days after his arrest) the trial judge asked defendant whether he was able to hire an attorney, to which he responded: "Yes, my mother and father are." He was then advised by the court that, if he was unable to afford to hire an attorney, the court would appoint counsel to represent him without cost either at that time or in a few days. Defendant replied: "Let's wait a few days." The minutes of *649 December 13, 1973 indicate that present counsel was appointed to represent defendant in this matter. Defendant was arraigned on January 7, 1974.
Prior to arraignment, defendant had voluntarily and intelligently waived counsel after having been fully advised of his rights at each critical stage of the proceedings. Also, defendant was represented by counsel at his arraignment[3] and at all subsequent critical stages of the proceedings. Hence, defendant's contention in this regard is likewise without substance.

ASSIGNMENT OF ERROR NO. 3
Complaint is made that the trial judge erred in denying a portion of a requested special charge submitted by defendant. The portion of the special charge so requested and objected to by the state reads:
If you find that the defendant committed a homicide but had no intention to commit a theft prior to or during the perpetration of the homicide and did not entertain any intention to commit a theft until after the homicide, you must find the defendant not guilty of murder in the first degree.
The trial judge is required to charge the jury as to the law that is . . . applicable to the case." La.Code Crim.P. art. 802 (1966). This includes all other offenses of which the accused may be convicted by responsive verdict. Id. art. 803. In addition to the charges that the trial judge must give in every case, article 807 allows the state and the defendant to submit requested special charges. That article reads in pertinent part as follows:
A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.

(Emphasis added.)
In charging the jury in the instant case, the trial judge read the first degree murder statute, La.R.S. 14:30 (1950), as amended, Acts 1973, No. 109, § 1. He then read the statutory definition of armed robbery. Id. 14:64, as amended, Acts 1966, No. 5, § 1 (extraordinary session). The next part of the charge consisted of his reading the second degree murder statute. Id. 14:30.1, as amended, Acts 1973, No. 111, § 1. Also read, because the evidence presented a question of whether defendant was engaged in aggravated burglary at the time of the killing, was the statute defining the crime of aggravated burglary. Id. 14:60. Finally the general charge included the definition of manslaughter, the last responsive guilty verdict. Id. 14:31, as amended, Acts 1973, No. 127, § 1.
The substance of the rejected portion of the special charge was that the jury should find defendant not guilty of first degree murder if it found that defendant committed a homicide but had no intention to commit a theft prior to or during the perpetration of the homicide and did not entertain any such intention until after the homicide. In place of the rejected portion of the special charge, the trial judge granted and read to the jury the following portion of a special charge submitted by defendant:
If you find that the defendant committed a homicide but did not commit or attempt to commit an armed robbery prior to or during the perpetration of the homicide, then you must find the defendant not guilty of murder in the first degree.. . . *650 Additionally, the court, in concluding its charge, stated:
I'm going to paraphrase, if you think he was committing an armed robbery and had the specific intent to kill this lady or harm her in anyway, great bodily harm, then he is guilty of first degree murder. `If you find the defendant was engaged in the perpetration or attempted perpetration of aggravated burglary of the residence of Agnes Hutchinson even though the defendant had no specific intent to kill, you shall find the defendant guilty of Second Degree Murder. If you find the defendant was not engaged in the perpetration or attempted perpetration of armed robber [sic] of Agnes Hutchinson or was not engaged in the perpetration or attempted perpetration of aggravated burglary of the residence of Agnes Hutchinson, but had the specific intent to kill or inflict great bodily harm upon Agnes Hutchinson, I charge you to find the defendant guilty of Second Degree Murder.' To paraphrase again the State is saying two things. If you find that he had the intent to arm rob her and kill her, it's first degree murder. If he had the intent to commit aggravated burglary even though he didn't have the intent to kill, it is second degree. If he had neither the intent to commit robbery or burglary but had the intent to kill or inflict great bodily harm, it is second degree murder.
We consider the rejected portion of the requested special charge was adequately included in the general charge and other special charges given to the jury as above set forth. Hence, the trial judge did not err in not giving the portion of the special charge originally requested by defendant. La.Code Crim.P. art. 807 (1966).
For the reasons assigned, the conviction and sentence are affirmed.
NOTES
[1] The correct procedural vehicle for asserting a complaint that the general or petit jury venire was improperly drawn, selected or constituted is a motion to quash and not a motion in arrest of judgment. State v. Kibby, 294 So.2d 196 (La.1974).
[2] La.Const. art. 7, § 41 (1921); La.Code Crim.P. art. 402 (1966). Under the 1974 Constitution, which became effective at midnight of December 31, 1974, this exemption was eliminated. Likewise, article 402 of the Code of Criminal Procedure was repealed to accommodate the change. See La.Const. art. 5, § 33(A); La.Acts 1974, No. 20, § 1 (extraordinary session) (effective January 1, 1975).
[3] See La.Code Crim.P. art. 512 (1966).