|.CANNELLA, Judge.
Defendant, Nicholas LeBoeuf, appeals from his conviction and sentence for First Degree Negligent Injury. We vacate the conviction and sentence and remand.
Defendant was charged with violation of La. R.S. 14:39.2 on August 26, 1997. He was tried by a jury of six persons on February 2, 3, 4, 1998 and found guilty as charged. On February 18, 1998, defendant’s post-trial motions for new trial and acquittal were denied. On the same day, prior to sentencing, the trial judge received a victim impact statement from the victim, Tara Hogan, her grandmother and defendant’s spoken response. The trial judge then sentenced defendant to 5 years imprisonment at hard labor, with one year suspended and a fine of $1,500. Defendant filed a Motion to Reconsider Sentence, which was subsequently denied.[1] |8On the night of June 14,1997, defendant was part of a group of people who left a party in Chauvin, Louisiana to drive to Grand Isle, Louisiana. The group left in three separate cars, following each other in a line. Defendant was driving the last vehicle, a small pick-up truck.
On the way to Grand Isle, the group stopped at a bank and a convenience store. Upon arriving in Grand Isle, they stopped at a motel looking for a room and were directed to another motel further down Louisiana Highway 1. On the way there, a car that was not part of the group cut in front of them and stopped. In response, the driver of the lead car slammed on his brakes causing a chain reaction crash of the three cars from Chauvin. As a result of the crash, the middle car was inoperable. The drivers of the other two vehicles pulled into the parking lot of an adjacent Sureway store. After they stopped, several local people arrived and a fight broke out between the two groups.
During the fight, defendant and two companions got into defendant’s truck and drove out of the parking lot. One of the occupants urged defendant to return to pick up one of the Chauvin women who had been left behind. Defendant drove back through the parking lot. As he did so, he hit some parked cars and Tara Hogan. Defendant did not stop after hitting her, but dragged her under his truck for some distance. He then drove away from the scene.
Tara Hogan testified that she and her boyfriend had been at a daiquiri shop prior to the accident. While at the shop, someone informed them that an accident had occurred in front of the Sureway store. After being told about the accident, a group of people got in their cars and headed to the scene. Once there, the fight broke out, during which, defendant got into his truck and left the parking lot. Then, defendant returned to the parking *868 lot. As he drove through the parking lot, [4he collided with a parked car and then hit Tara Hogan, who stated that the truck appeared to swerve towards her and that she was dragged under it after being struck.
The State called several other witnesses who were in the parking lot at the time of the accident. Kelly Besson (Besson) testified that she saw the victim’s boyfriend punch defendant’s truck as he was driving away from the parking lot the first time. She stated that defendant safely made it onto the highway and then pulled back into the parking lot. Besson said that, as defendant’s truck traveled through the parking lot for the second time, it hit Tara Hogan and dragged her without slowing down. She also testified that the victim was standing still when she was hit. Ta-shisha Seiber and William Bonds both testified that the accident happened as the truck returned to the parking lot and that Tara Hogan was trying to get out of the way of defendant’s truck, but didn’t move fast enough. Tiffany Folse testified that the victim was standing still at the time of the impact and that the truck swerved a little toward the victim prior to impact.
Officer Kevin Resweber of the Grand Isle Police Department testified that, on the night of June 14, 1997, he received a call regarding an accident. On route to responding to the call, he noticed a truck matching the description of the truck involved in the accident driving on Louisiana Highway 1 without its lights on. When the truck turned around, Officer Resweber got behind it and ordered the driver to pull over to the side of the road. He stated that the defendant immediately admitted that he had been involved in an accident. Officer Resweber said that, at that point, he read defendant his rights under Miranda v. Arizona,[2] He also detected the odor of alcoholic beverages on defendant’s breath | sand a slight slur to his speech, so he conducted a field sobriety test. Defendant failed the field sobriety test, was advised of his rights, which he waived and was arrested. Officer Resweber took defendant to the station and administered an Intoxilyzer 500 test to determine defendant’s blood alcohol content.
Sergeant Michael Arant of the Grand Isle Police Department also testified. During his testimony, the State presented a video tape of the accident scene taken on the night of the accident and a time-lapse video tape from a bank night teller station located in the same area. The time-lapse video tape shows defendant’s truck passing through the Sureway parking lot twice. Officer Arant testified that defendant’s truck hit the red car that had caused the Louisiana Highway 1 chain reaction crash. He also testified that the victim was dragged under defendant’s truck for a distance of approximately 38 feet, 4 inches after impact.
Dr. Barry Munn, an orthopedic resident, took over Tara Hogan’s treatment four weeks after the incident. She had been hospitalized at another facility prior to his involvement in the case. The doctor testified that the victim suffered two femur (thigh bone) fractures, a complex pelvic injury, in that her pelvis had been broken in several places, a ruptured bladder and fractures to both feet. She was hospitalized for four to six weeks at Charity Hospital under his care, where she underwent surgery. The doctor stated that the injuries were very painful and that Tara Hogan may have residual chronic pain from her injuries.
The defense called several witnesses from the Chauvin group who were at the scene of the accident. Darren White, Jr. (White) testified that he was a passenger in defendant’s truck at the time which the victim was hit and that he, defendant and another male got into defendant’s truck to get away from the fight. However, White convinced defendant to return to the parking lot to pick up his | (¡girlfriend. Upon returning to the parking lot, people in the *869 parking lot tried to block them from leaving. White stated that, as they were driving through the lot, the victim came from the blind side and when he saw her it was too late to warn the defendant. White testified that the victim was hit by the front passenger corner of defendant’s truck.
Defendant took the stand and testified that, on the date of the accident, he was seventeen years old. He admitted drinking two or three beers that night. Defendant stated that when he returned to the parking lot to pick up the girlfriend of his passenger, some of the people there began to beat on his truck. As a result, he accelerated to get away from the attack and collided with some of the parked cars. Defendant testified that he did not see the victim and did not know that he had hit her. He further testified that, when he left the scene, he waited for the police. When he saw the police going to the scene, he pulled out so that the officer could see him.
On appeal, defendant first asserts that the State failed to produce any evidence of proximate or direct causation between defendant’s alleged operation of a vehicle under the influence of alcohol and the injury suffered by the victim in this case. Second, he asserts that the evidence, when viewed in the light most favorable to the prosecution, fails to sustain a conviction for First Degree Vehicular Negligent Injuring. Third, defendant contends that his sentence is excessive. Fourth, defendant argues that the trial judge erred in instructing the jury that a blood alcohol reading of .04% is sufficient to establish intoxication in a person under the age of eighteen years.
At the time of the accident, La. R.S. 14:39.2 provided that:
|7A. First degree vehicular negligent injuring is the inflicting of serious bodily injury upon the person of another when caused by the offender’s operation of a motor vehicle, aircraft, watercraft, or other means of conveyance, under any of the following circumstances:
(1) The offender is under the influence of alcoholic beverages.
(2) The offender’s blood alcohol concentration is 0.10 percent or more by weight based upon grams of alcohol per one hundred cubic centimeters of blood.
(3) The offender is under the influence of any controlled dangerous substance listed in Schedule I, II, III, IV, or V as set forth in R.S. 40:964.
B. The violation of a statute or ordinance shall be considered only as presumptive evidence of negligence as set forth in Subsection A.
C. For purposes of this Section, “serious bodily injury” means bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member or organ or a mental faculty, or a substantial risk of death.
D. Whoever commits the crime of first degree vehicular negligent -injuring shall be fined not more than two thousand dollars or imprisoned with or without hard labor for not more than five years, or both.[3]
Because we find prejudicial and reversible error in the evidentiary rulings relative to the intoxilyzer test result, we will only address the jury charge assignment of eri;or.
*870 Defendant asserts that it was prejudicial and reversible error for the trial judge to instruct the jury that a blood alcohol reading of .04% is sufficient to establish intoxication in a person under the age of 18, as found in La.R.S. 14:98, ^Driving While Intoxicated (DWI). Defendant agrees that DWI is a responsive verdict in this case. However, defendant argues that the jury charge was confusing in the context of this case. Defendant claims this is particularly prejudicial since no expert testified explaining the numbers. Defendant further argues that the State charged defendant under subsection (1) of R.S. 14:39.2, but not subsection (2) which deals with a presumptive level of intoxication. Thus, the trial judge should have only charged the jury with that part of the DWI statute which corresponded to subsection (1) of the First Degree Vehicular Negligent Injuring statute, rather than including the intoxication level for persons under 17 found in the DWI statute.
The jury charge complained of was given as part of the responsive verdicts charge to the jury. La.C.Cr.P. art. 814A(7.2) provides that operating a vehicle while intoxicated (R.S. 14:98-DWI) is a responsive verdict to First Degree Vehicular Negligent Injuring (R.S. 14:39.2). At the time of the offense, La. R.S. 14:98 in part provided:
A. The crime of operating a vehicle while intoxicated is the operating of any motor vehicle, aircraft, watercraft, vessel, or other means of conveyance when:
(1) The operator is under the influence of alcoholic beverages; or
(2) The operator’s blood alcohol concentration is 0.10 percent or more by weight or is 0.04- percent or more by weight if the operator is under the age of eighteen years, based on grams of alcohol per one hundred cubic centimeters of blood; or.... [Emphasis added.],
The standard for reviewing jury charges requires that the charges be read as a whole. A trial judge charges a jury by presenting to the jury his entire instructions. Thus, any appellate review should always consider the entire | ^presentation. State v. Hubbard, 97-916 (La.App. 5th Cir. 1/27/98), 708 So.2d 1099, 1107, writ denied, 98-0643 (La.8/28/98), 723 So.2d 415. In addition, the trial judge is required to charge the jury as to the law that is applicable to the ease. La.C.Cr.P. art. 802; State v. Wilson, 315 So.2d 646, 649 (La.1975). Pursuant to La.C.Cr.P. art. 803, the charge must include all other offenses of which the accused may be convicted by responsive verdict. State v. Wilson, 315 So.2d at 649. Thus, we find that the trial judge did not err in the jury charges he gave to the jury. However, in the context of this case, the jury charge combined with the confusing evidentiary rulings on the admissibility of the evidence was so prejudicial that the verdict must be vacated.
On February 2, 1998, the first day of the trial, Officer Resweber testified that defendant was given an intoxilyzer test to discover his blood alcohol level. The State asked what the results were, but defendant objected that a proper foundation had not been laid. The trial judge sustained the objection. The State subsequently attempted to cure the objection by questioning him about his qualifications. During the examination, the State showed Officer Resweber a copy of the document with the results, confirmed that the signature was his and that the report accurately reflected the results from the test. (State’s exhibit 3). The State then, for the second time, asked Officer Resweber to state the results of the test. He testified that the result was .076 grams percent. Defendant objected, stating, “Judged (sic), allow my objection to continuing (sic).”[4] The judge asked “What objection, Counsel?” The defendant’s counsel replied, “On the intoxi-lyzer, the results of the intoxilyzer. A *871 proper predicate has not been laid.”[5] Loin response, the judge called the attorneys to a side bar where a discussion was held and the trial judge informed defense counsel that he was going to have to specifically put the objection on the record to avoid any confusion. At the conclusion of the side bar conference, the prosecutor started to question Officer Resweber about another matter, but the trial judge stated: “Just a minute. Let me rule on the last objection. That objection is overruled. You may proceed.”[6] At that point, the jury had heard the results of the test and the results had been admitted over counsel’s objection.
At the beginning of the third day of trial, February 4, 1998, outside of the presence of the jury, the issue of the admissibility of the intoxilyzer test was again discussed. The trial judge stated:
Let me say first of all I have before me under advisement an offer I believe it’s state’s exhibit three relative to the results of the intoxilyzer. I’m not going to pemit that document to be introduced into evidence. The Court has examined the transcript of these proceedings. I’ve examined the law in this area and I’m of the opinion that the proper foundation has not been laid for the admissibility of that document into evidence. Therefore, the Court will sustain the objection of the defense and I’m making that ruling now so that if either of you wish to put anything into the record realtive (sic) the Court’s ruling then I will permit you to do that at this time. [Emphasis added.]
Record page 416.
The prosecutor objected to the ruling, after which, defense counsel stated the reasons he agreed with the ruling and the trial judge stated his reasons for the decision.[7] The jury was then returned to the courtroom and the trial continued, but the trial judge failed to instruct the jury to disregard the evidence. However, | nlater that day, the issue of the intoxilyzer test was again raised in the context of the State’s rebuttal to defendant’s testimony that he was not properly advised of his rights. The trial judge allowed Officer Resweber to testify to his qualifications to perform the test and to the procedures generally used and that were followed in this case.[8] At one point during the rebuttal testimony, concerned with the constant references to the test, defense counsel requested the trial judge to admonish the jury that the results were not admissible and were not to be considered. The trial judge refused to admonish the jury at that time.[9] However, subsequently, the trial judge realized that he had not told the jury that he had excluded the results of the intoxilyzer test contained in State’s Exhibit 3. He realized this when defendant objected to the State’s second attempt to introduce the exhibit. The trial judge sustained the objection, stating that he was not going to allow questioning on the document because he had previously excluded it.[10] He then instructed the jury as follows:
... I have a matter under advisement that I need to rule upon that the Court considered on yesterday with respects to state’s exhibit three and the Court is going to deny the admissibility of state’s exhibit three into evidence for reasons that have already been provided to counsel....
Record page 437.
In response, defense counsel requested that the jury be told what “state’s exhibit three is,” but the trial judge refused, stating that it was pointed out to the jury on *872 the day before and he was not going to comment on the evidence.[11]
|1gThe State rested on that same day. The prosecutor, defense counsel and the trial judge discussed the jury instructions. During the discussion, the trial judge said that he would admonish the jury not to consider the results of the intoxilyzer test prior to giving the jury instructions. In this respect, he instructed the jury as follows:
Also, I want to admonish you that during the course of the trial the Court has ruled there was an objection relative to the tests results of the intoxilyzer and the Court has made a ruling on that. The Court has subsequently denied the admissibility of the test results and therefore you are to disregard any testimony relative to the results of the intox-ilyzer machine....
Record page 443.
As can be seen by the record, during the course of the trial, references to the intoxi-lyzer arose repeatedly and defense counsel objected to either the references or the result each time. During presentation of the State’s case, the first objection arose when the State attempted to elicit the results from Officer Resweber. The defendant’s objection on the basis of lack of foundation was sustained. After further questioning by the prosecutor, Officer Re-sweber was permitted to testify that defendant’s blood alcohol level was a certain percentage, over defendant’s objection. Two days later, out of the presence of the jury, the trial judge ruled that the document showing the test result was not admissible. In effect, he rescinded' the ruling he made on the first day of trial, but he failed to admonish the jury to disregard the evidence. The trial continued and defendant took the stand, challenging the manner in which he was advised of his rights relative to the test. Thus, on rebuttal, references to the test were necessary and the State questioned Officer Resweber again about his qualifications to give the test, and the procedures that were, and should be followed. Because of this, the | ,ajury was repeatedly exposed to testimony about the intoxilyzer test and had yet to be admonished not to consider the results testified to by Officer Resweber. Only when the State again attempted to have the document admitted, did the trial judge realize that the jury had not been instructed to disregard the testimony about the test result. And then, he only referred to the document. He did not mention the testimony of Officer Resweber. Furthermore, although he instructed the jury to disregard State’s exhibit 3 during the rebuttal testimony of Officer Resweber, the trial judge refused to explain that the exhibit contained the intoxilyzer result, and that the results were ruled inadmissible. The jury was not instructed to disregard Officer Resweber’s testimony disclosing defendant’s blood alcohol level until after the trial was over and after the jury charges were given. We find that the evidentiary rulings relative to the test result were very confusing. As a result, we find that the verdict was prejudiced by the admission of the evidence. Further, we find that the admonishment to disregard the inadmissible testimony two days after the jury heard it was untimely and could not cure the prejudicial effect it had on the verdict. This prejudicial effect was compounded when the jury charges included the responsive verdict of DWI, with its stated blood alcohol level for minors. Therefore, we vacate the conviction, sentence and remand for further proceedings.
Accordingly, the defendant’s conviction and sentence are vacated and the case remanded for further proceedings.
CONVICTION AND SENTENCE VACATED; REMANDED.

. This case was originally set on the docket and removed for appointment of new appellate counsel.

. Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).

. It is noted that by Act 1997, No. 1021, effective July 11, 1997, the Louisiana Legislature amended La.R.S. 14:39.2 A(2) to lower the required blood alcohol concentration to 0.08 percent. It also amended the first paragraph of La. R.S. 14:39.2 to read as follows:
A. First degree vehicular negligent injuring is the inflicting of serious bodily injury upon the person of a human being when caused proximately or caused directly by an offender engaged in the operation of, or in actual physical control of, any motor vehicle, aircraft, watercraft, or other means of conveyance whenever any of the following conditions exists ...

. Record page 108.

. Id.

. Record pages 106-109.

. Record pages 416-418.

. Record pages 422-437.

. Record page 423.

. Record page 436.

. Id.