846 So.2d 76 (2003)
STATE of Louisiana
v.
Anthony ROBINSON.
No. 02-KA-1253.
Court of Appeal of Louisiana, Fifth Circuit.
April 8, 2003.
*79 Paul D. Connick, Jr., District Attorney, Alan D. Alario, II, Terry M. Boudreaux, Assistant District Attorneys, 24th Judicial District Parish of Jefferson, Gretna, LA, for Plaintiff/Appellee.
Margaret S. Sollars, Thibodaux, LA, for Defendant-Appellant.
Anthony Robinson, Angola, LA, in Proper Person.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY, and CLARENCE E. McMANUS.
THOMAS F. DALEY, Judge.
Defendant, Anthony Robinson, appeals his conviction of possession with the intent to distribute cocaine, a violation of LSA-R.S. 40:967(A). On appeal, he assigns the following four errors of the trial court:
1. The evidence was insufficient to support this conviction;
2. The Court committed reversible error by not allowing the defendant to fully impeach the arresting officer with his initial report, nor to let it be published before the jury;
3. Evidence presented by the State in the multiple offender hearing was inadequate;
4. Mr. Robinson was sentenced excessively, particularly when the Court failed to articulate any reasons for such a harsh sentence.
We affirm Mr. Robinson's conviction and sentence.
FACTS
Officer LaBroussa of the Kenner Police Department testified that he was on routine patrol in the 1000 block of 31st Street in Kenner on the night of October 25, 2000, when he observed the defendant driving a Cadillac headed east on the same street. The defendant was not wearing a seatbelt and his vehicle's license plate was not illuminated. Officer LaBroussa attempted to effectuate a vehicle stop. The officer sounded his siren and turned on his unit's overhead lights, but the driver of the Cadillac refused to stop and accelerated to 45 mph in a 20 mph speed zone. As Officer LaBroussa pursued the vehicle, it slowed down for the driver to turn the corner. It was at this time, according to the officer, that a plastic bag was discarded from the passenger side window. The vehicle stopped when another patrol unit blocked its path. The defendant and a female passenger, later identified as Shirley Ramsey, *80 were detained.[1] Officer LaBroussa recovered the discarded plastic bag, which appeared to contain rock cocaine. The substance field tested positive for cocaine. The defendant and Ms. Ramsey were arrested. Officer LaBroussa wrote a report of the incident.
The State also presented the testimony of Officer Bruce Harrison as an expert in the factors that constitute distribution of narcotics. The defendant presented no witnesses.
ASSIGNMENT OF ERROR NUMBER ONE
Defendant contends that the evidence presented by the State was insufficient to convict him of the charged offense.
When the defendant challenges sufficiency of the evidence, this Court must decide whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the State proved the essential elements of the crime beyond a reasonable doubt.[2] In applying this standard, the reviewing court will not assess credibility nor reweigh the evidence.[3] In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual finding.[4]
Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience.[5] In cases involving circumstantial evidence, the trial judge must instruct the jurors that the evidence must exclude every reasonable hypothesis of innocence.[6] Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt.[7]
In this case the defendant was charged with possession with the intent to distribute cocaine. To prove possession with the intent to distribute cocaine, the State must show the defendant knowingly or intentionally possessed the drugs and he did so with the specific intent to distribute them.[8] Specific intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act."[9] Specific intent may be inferred from the circumstances *81 of a transaction and from the actions of the accused. Further, specific intent is a legal conclusion to be resolved by the fact-finder.[10]
The intent to distribute may be established by proving circumstances surrounding defendant's possession which gave rise to an inference of such intent. Such circumstances include (1) previous attempts to distribute; (2) whether the drugs are in a form consistent with distribution; (3) the amount of the drugs; (4) expert testimony indicating the amount of the drugs recovered is not consistent with personal use; and (5) paraphernalia evidencing an intent to distribute.[11]
Defendant argues that the State failed to prove he knew the drugs were in the car or that he exercised control over them, elements essential to establish "possession." He argues that no direct evidence was presented at trial and the circumstantial evidence was insufficient, because the sole fact witness was not credible.[12] Additionally he alleges that the only indication of possible guilty knowledge was his flight from officers and this could reasonably be explained as his attempt to avoid a traffic citation. Defendant suggests as a hypothesis of his innocence that Ms. Ramsey possessed the cocaine in the car and she discarded it from her window.
The State presented the testimony of Officer LaBroussa to prove its case regarding the element of "possession." Officer LaBroussa testified that he observed the actions of the defendant before and after the contraband was discarded. He testified that at times during this incident, he was able to observe the occupants of defendant's vehicle through the driver and passenger side windows. He stated that before the disposal of the narcotics, the defendant fled upon becoming aware of the officer's presence.[13] Officer LaBroussa said that during the chase, the defendant would look in the rearview mirror and then look downward inside the vehicle. He further testified that although he did not see the defendant's hand protrude from the window when the drugs were discarded from the passenger window, he did observe the defendant "fidgeting, turning his upper torso and reaching across to the passenger side window immediately before the drugs were abandoned." Additionally, the officer testified that during this time, the passenger did not turn her body, but merely remained facing forward in her seat. According to Officer LaBroussa, the defendant continued to flee until he was stopped by another police unit, which blocked his path. Officer LaBroussa testified that because of defendant's actions, he was of the opinion that the defendant discarded the drugs.
The jury apparently believed the testimony of the officer who witnessed this incident and they concluded that the defendant's actions shortly before and after the abandonment of the drugs indicated that he, and not Ms. Ramsey, physically possessed the cocaine that was discarded *82 from the vehicle. In this regard, the jury apparently rejected defendant's alternative hypothesis, that Ms. Ramsey physically possessed the drugs, as unreasonable. It is not the function of the appellate court to assess the credibility of witnesses or reweigh the evidence.[14]
In the first pro se argument, defendant argues that the State's evidence concerning "distribution" was insufficient to establish this element of the offense charged. He reasons that the quantity of drugs recovered could have been merely for personal use, by one heavy user or shared between two users (i.e., the two occupants of his vehicle).
Officer Bruce Harrison of the Jefferson Parish Sheriff's Office Narcotics Unit was qualified as an expert in the use, packaging, distribution, and value of narcotics. It was Officer Harrison's expert opinion that because of the quantity of drugs (16 rocks), the packaging of the drugs (individual doses), and the value of the drugs seized ($160.00-$320.00), defendant was involved in distribution of narcotics and not possession for personal use. According to Officer Harrison, the quantity of drugs involved in this case was in excess of what a "heavy user" would consume in a day. He testified that if this amount of drugs were consumed by an individual on a daily basis, he would be unable to function in society. According to Officer Harrison, a user generally possesses a few rocks, which he consumes, and then he buys more. It was also his experience that someone using this quantity of drugs would normally not have the amount of money required to purchase this quantity of drugs. On cross examination, Officer Harrison said it was possible, but not likely, and not part of his experience that this amount of crack cocaine packaged in this way was for individual use and not for distribution.
Based upon this testimony, the jury could have reasonably concluded that the drugs recovered in this case were intended for distribution and not personal use. Under the Jackson analysis, the defendant's conviction was based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the State proved the essential elements of the crime of possession of cocaine with the intent to distribute beyond a reasonable doubt.
ASSIGNMENT OF ERROR NUMBER TWO
Defendant contends that the trial judge erred in restricting use of the officer's police report for cross-examination of the State's only fact witness, Officer LaBroussa, and in precluding defendant from offering that document into evidence. He alleges that his restriction in the use of the report and denial of the right to have the document viewed by the jury denied his due process right of confrontation.
The United States Constitution, Sixth Amendment, guarantees the right of the accused in a criminal prosecution "to be confronted with witnesses against him." The Louisiana Constitution, Article I, § 16 also has a confrontation clause that specifically affords the defendant a right to "cross-examine the witnesses against him."[15] The cross-examiner is not only permitted to delve into the witness's story to test his perceptions and memory, but *83 has traditionally been allowed to impeach the witness.[16]
Defendant argues that Officer LaBroussa's credibility was at issue. In particular, the defendant sought to highlight the fact that his testimony on direct examination, that he saw defendant "fidgeting" before discarding the contraband, was omitted from the police report. Additionally, defendant sought to illustrate that the officer's observation was impaired at the time of the offense because the report indicates that the defendant's rear car window was covered in cellophane. Finally, the defendant argues the report bolsters his defense in that the report contains a statement indicating the officer did not know who discarded the contraband.
Contrary to defendant's assertion that he was restricted in using the police report, the record indicates that he clearly used the contents of the police report in his cross examination of Officer LaBroussa.
Defendant first argues that he should have been allowed to use the police report to impeach the officer's credibility and that on this basis the report would have been admissible.
The credibility of a witness may be attacked by any party. LSA-C.E. art. 607(A). In this regard, prior inconsistent statements and evidence contradicting the witness's testimony may be used to impeach the witness's credibility.[17] A distinct foundation must be laid before evidence of a prior inconsistent statement is admissible to impeach a witness.[18] The witness's attention must be fairly directed to the particular statement and he must be given an opportunity to admit the fact of the prior inconsistent statement.[19]
In this case the officer admitted that certain details, such as his observation that the defendant was "fidgeting" immediately prior to the contraband's discard, were omitted from his report. The trial court, in denying the motion, distinguished the omission from an inconsistent statement. Defendant failed to establish a prior inconsistency for impeachment purposes. Therefore, the police report was not admissible under LSA-C.E. art. 607. The jury, however, clearly heard the officer explain that he had not included this information in the report.
Defendant, in his pro se supplemental brief, relies upon State v. Gabriel, 450 So.2d 611 (La.1984), to argue that the police report was admissible. In Gabriel, defendant's identification was an issue at trial. Following the robbery of the homestead, an off-duty officer gave chase after the vehicle containing the perpetrators. It was on this basis that the witness indicated to the jury he was able to identify the defendant driver of the get away car. He also testified that he later confronted defendant and his two accomplices at police headquarters, when he turned in his notes, a fact unknown to the defense before trial. When questioned at trial as to the basis of his identification of the defendant (i.e., the commission of the crime or the subsequent meeting at headquarters), the officer testified that he identified the perpetrators of the robbery, by face, on the date he went *84 to headquarters and this fact was contained in the police report. An in camera inspection of the report did not support the officer's trial testimony. The Supreme Court concluded that since the police report showed an inconsistency in the officer's testimony, the report should have been disclosed for purposes of establishing the inconsistency. The present case is distinguishable from Gabriel, in that no prior inconsistency was established in this case.
Defendant also argues that he should have been allowed to use the police report to attack the officer's credibility regarding the officer's alleged observations on the night of this offense. In particular, the defendant argues that the police report indicates that the rear window of the defendant's vehicle was covered in cellophane, thus obstructing the officer's view of the defendant's actions inside the vehicle.
The record reflects that defense counsel questioned Officer LaBroussa regarding the missing rear auto glass and the witness testified that he could not be sure whether or not the glass was missing. At that time, defense counsel made no attempt to use the report, either to refresh the witness's memory (LSA-C.E. art. 812), or to develop a foundation for impeachment. LSA-C.E. arts. 607, 613. Defendant's allegation that he was not allowed full cross-examination of this witness with the aid of the police report has no merit.
Defendant argues that the trial court erred in refusing to admit the police report as a business record under LSA-C.E. art. 803, reasoning that this evidentiary rule is intended to prevent a police report from being used in lieu of the officer's testimony.
At the conclusion of the cross-examination of Officer LaBroussa, defense counsel moved to admit the police report into evidence. The State objected. The defendant alleged it was admissible as a "business record exception" in that it was prepared in the ordinary course of business. The court ruled that the document was inadmissible.
LSA-C.E. art. 803(5) states: "Public records and reports which are specifically excluded by Article 803(8)(b) shall not qualify as an exception to the hearsay rule." Investigative reports by police and other law enforcement personnel are specifically excluded as business records under LSA-C.E. art. 803(8)(b). See State v. Casey, 99-0023 (La.01/26/00), 775 So.2d 1022, 1031. Therefore, the trial court's ruling was not error.
Finally, defendant argues that the police report, although hearsay, should have nonetheless been admitted because it was reliable, and to exclude it compromised the defendant's right to present a defense. He cites State v. Gremillion, 542 So.2d 1074 (La.1989), as support. Gremillion, however, did not concern police reports, but a different exception to the hearsay rule involving statements made by the victim. Gremillion is not applicable to the facts of the present case.
Assignment of Error Two lacks merit.
ASSIGNMENT OF ERROR THREE
By this Assignment of Error, defendant seeks to have the multiple offender adjudication and sentence vacated. He reasons that the predicate offenses used by the State for enhancement purposes were defective, because during each of those proceedings, he was not advised of the possibility of further prosecutions under the Multiple Offender Statute (LSA-R.S. 15:529.1), nor was he advised of the sentencing exposure for the predicate offenses.
*85 The record indicates that the State filed a multiple bill alleging that defendant was a third felony offender.[20] The two predicate convictions were (1) a guilty plea in Case No. 93-2908, in Division "S" of the Twenty Fourth Judicial District Court for the Parish of Jefferson, for Possession of Cocaine with the intent to Distribute (LSA-R.S. 40:967(A)), which was entered on September 23, 1993, and (2) a guilty plea in Case No. 94-3319, in Division "S" of the Twenty Fourth Judicial District Court for the Parish of Jefferson, for the knowing and intentional acquisition of a controlled dangerous substance by means of fraud and deceit (LSA-R.S. 40:971), which was entered on September 27, 1994.
In the response to the bill, defendant alleged that the guilty pleas were defective, specifically because the defendant was not advised that the convictions could be used for future enhancement purposes.
A hearing was held on the multiple bill. The defendant orally moved for a dismissal of the multiple offender proceedings. Defendant objected to the introduction of his prior guilty pleas on the basis that the guilty pleas were not knowing and voluntary because he was not first advised of the "sentencing range" and "the consequences of being made a habitual offender." At the conclusion of the hearing, defendant again objected to the State's two exhibits. The trial judge adjudicated the defendant a triple offender under the Multiple Offender Statute (LSA-R.S. 15:529.1(A)(2)(b)(ii)), vacated the prior sentence and re-sentenced him to life imprisonment as a third felony offender.
To prove a defendant is a habitual offender, the State must initially prove the prior felony conviction(s) and that defendant is the same person.[21] When the State relies on a prior conviction that is based on a guilty plea to prove defendant's multiple offender status and defendant denies the allegations of the multiple bill, the State has the burden of proving the existence of the prior guilty plea and that the defendant's plea was counseled. State v. Shelton, 621 So.2d 769, 779-780 (La.1993). Once the State meets this burden, the defendant must produce some affirmative evidence of an infringement of his rights or of a procedural irregularity. If the defendant meets this burden, the burden shifts back to the State to prove the constitutionality of the plea, i.e., that it was knowing and voluntary. State v. Shelton, supra. The State can meet its final burden by producing a "perfect transcript" of articulated waiver of the three core rights enumerated in Boykin,[22] namely (1) right to trial by jury, (2) defendant's privilege against self-incrimination, and (3) his right to confront his accusers.
In this case, the defendant's identity was established at the multiple bill hearing by the use of the expert testimony of a fingerprint expert. Defendant, however, denied the allegations of the multiple bill, and attacked the predicate offenses, which are based on 1993 and 1994 guilty pleas. The State's exhibits showed that defendant was represented by counsel at both pleas. Therefore, the State met its initial burden under Shelton of proving the existence of the pleas and defendant's representation by counsel. The burden then *86 shifted back to defendant to prove "by affirmative evidence, an infringement of his rights or of a procedural irregularity." The defendant argues that the evidence offered by the State was insufficient to prove he was informed that these pleas could be used for enhancement purposes. He also alleges that he was not advised of his sentencing exposure (minimum and maximum sentence) for each offense. For the reasons herein discussed, defendant failed to meet his burden under Shelton.
Defendant correctly asserts that the documents do not contain evidence that he was advised of sentencing range or enhancement possibilities.[23] However, these alleged defects do not render the pleas defective for enhancement purposes. The two guilty pleas (occurring in 1993 and 1994) pre-dated the enactment of LSA-C.Cr.P. art. 556.1. At the time of these pleas, no requirement existed that defendant be advised of the possibility of enhancement. The failure to so advise defendant does not render the predicate convictions defective for enhancement purposes. See State v. Sarrio, 01-543, pp. 28-29 (La.App. 5 Cir. 11/27/01), 803 So.2d 212, 224.
Defendant also claims that the predicate convictions are defective for purposes of the multiple offender proceeding, because he was not informed of sentencing range at the time he entered these pleas. This argument likewise lacks merit. See State v. Anderson, 98-2977 (La.3/19/99), 732 So.2d 517.
For these reasons, the defendant's predicate guilty pleas were not constitutionally defective. The trial judge correctly found that the State met its burden of proving defendant was a third felony offender.
ASSIGNMENT OF ERROR NUMBER FOUR
Defendant contends that his life sentence as a third felony offender is excessive.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive or cruel punishment.
The mandatory minimum sentences provided for under the Habitual Offender Statute are presumed to be constitutional. LSA-R.S. 15:529.1; State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672. In order to rebut the presumption that the mandatory minimum sentence is constitutional, defendant must clearly and convincingly show that he is exceptional; that is, because of unusual circumstances he is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. State v. Johnson, supra. Downward departures from the minimum sentence under the Habitual Offender Statute should occur only in rare situations. State v. Johnson, supra. A downward departure from the minimum sentence mandated by the Habitual Offender Statute is warranted if the trial court determines that the minimum sentence mandated makes no measurable contribution to acceptable goals of punishment or that the sentence amounts to nothing more than a purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the offense.[24] If a downward departure is warranted, the *87 trial judge shall sentence the defendant to the longest sentence that is not constitutionally excessive. State v. Johnson, 709 So.2d at 677.
Defendant was found guilty of possession of cocaine with intent to distribute (LSA-R.S. 40:967(A)), and was adjudicated a third felony offender. At the time of the commission of the present offense, the sentencing range for a third felony offender, with an underlying conviction for a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years, was imprisonment "for the remainder of his natural life, without benefit of parole, probation or suspension of sentence." LSA-R.S. 15:529.1(A)(1)(b)(ii). The defendant was sentenced to life imprisonment, without benefit of parole, probation, or suspension of sentence for five years.[25] Hence, the sentence imposed was the mandatory minimum sentence prescribed by the Habitual Offender Law. LSA-R.S. 15:529.1(A)(1)(b)(ii).
Defendant alleges on appeal that the trial court erred in summarily sentencing him to life imprisonment, without giving reasons, and without taking into account mitigating factors such as his young age (33 years), his potential for rehabilitation, his remorse and the fact that he was the father of, and supporting six young children.[26]
In State v. Jones,[27] the court noted that in the cases of life sentences imposed upon multiple offenders, failure to articulate reasons is not error. The court reasoned that "[a]rticulating reasons or factors would be an exercise in futility since the court has no discretion."
Defendant cites State v. Randall, 98-1763 (La.App. 3 Cir. 6/9/99), 741 So.2d 852 in support of his position that his young age should have qualified him for a downward departure, but that portion of the case was subsequently reversed by the Louisiana Supreme Court. State v. Randall, 99-2476 (La.12/15/00), 776 So.2d 424, 425.
Moreover, defendant's remorse, potential for rehabilitation and family obligations do not appear to be "clear and convincing evidence" that he is a "victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case." State v. Johnson, 709 So.2d at 676. Additionally, the facts of this case warrant the sentence imposed. The defendant has numerous arrests and at least three felony drug convictions. Defendant's repeated drug violations and other criminal behavior are exactly the type of conduct the legislature intended to punish when it originally enacted the multiple offender sentencing provisions.[28]
ERROR PATENT DISCUSSION
The trial judge failed to advise the defendant of the prescriptive period for filing post-conviction relief pursuant to LSA-C.Cr.P. art. 930.8. We hereby remand the matter for the trial court to advise the defendant regarding this issue and include evidence of such notice in the record.
*88 AFFIRMED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] Following the State's case, Shirley Ramsey moved for and was granted a directed verdict of acquittal. The charges against Ms. Ramsey were nolle prossed on July 17, 2001. This appeal only involves Anthony Robinson.
[2] Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); State v. Mitchell, 99-3342, p. 9 (La.10/17/00), 772 So.2d 78, 82.
[3] State v. Marcantel, 00-1629, p. 14 (La.4/3/02), 815 So.2d 50, 56.
[4] State v. Ruffin, 02-798, p. 10 (La.App. 5 Cir. 12/30/02), 836 So.2d 625.
[5] State v. Williams, 99-223, pp. 9-10 (La.App. 5 Cir. 6/30/99), 742 So.2d 604, 608.
[6] LSA-R.S. 15:438; State v. Mitchell, 772 So.2d at 83.
[7] State v. Ortiz, 96-1609, p. 22 (La.10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998); State v. Rogers, 99-1378, p. 8 (La.App. 5 Cir. 11/28/00), 772 So.2d 960, 964, writ denied, 01-0204 (La.12/7/01), 802 So.2d 641.
[8] LSA-R.S. 40:967; State v. Snavely, 99-1223, pp. 16-17 (La.App. 5 Cir. 4/12/00), 759 So.2d 950, 958, writ denied, 00-1439 (La.2/16/01), 785 So.2d 840.
[9] LSA-R.S. 14:10(1); State v. Mitchell, 772 So.2d 78, 82; State v. Coleman, 02-345, p. 6 (La.App. 5 Cir. 9/18/02), 829 So.2d 468, 471.
[10] State v. Graham, 420 So.2d at 1128; State v. Meyers, 95-750, p. 10 (La.App. 5 Cir. 11/26/96), 683 So.2d 1378, 1383, writ denied, 97-0234 (La.6/20/97), 695 So.2d 1350.
[11] State v. Hearold, 603 So.2d 731, 735 (La. 1992).
[12] See discussion, Assignment of Error Number Two, infra.
[13] Headlong flight is the consummate act of evasion and although not necessarily indicative of wrongdoing, it is certainly suggestive of the same. Illinois v. Wardlow, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000).
[14] State ex rel. Graffagnino v. King, 436 So.2d 559, 563 (La.1983); State v. Lewis, 98-672, p. 10 (La.App. 5 Cir. 3/10/99), 732 So.2d 556, 560, writ denied, 99-2818 (La.4/20/00), 760 So.2d 334.
[15] State v. Casey, 99-23, pp. 15-16 (La.1/26/00), 775 So.2d 1022, 1030, cert denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000).
[16] State v. Nash, 475 So.2d 752, 754 (La. 1985); State v. Charles, 00-1586, pp. 8-9 (La. App. 5 Cir. 6/27/01), 790 So.2d 705, 708.
[17] LSA-C.E. art. 607(D); State v. Johnson, 01-842, p. 19 (La.App. 5 Cir. 2/13/02), 812 So.2d 106, 115.
[18] LSA-C.E. art. 613; State v. Johnson, 812 So.2d at 106, 116.
[19] State v. Johnson, supra; State v. Jarvis, 97-1174 (La.App. 5 Cir. 4/9/98), 710 So.2d 831, 835, writ denied, 98-2219 (La.1/8/99), 734 So.2d 1222.
[20] At the original sentencing, the State indicated defendant would be charged as a third felony offender, not a fourth felony offender, as alleged by defendant on appeal. (R., p. 177; defense brief, p. 14).
[21] LSA-R.S. 15:529.1; State v. Zachary, 01-3191, p. 5 (La.10/25/02), 829 So.2d 405, 407; State v. Mims, 00-1507, pp. 11-12 (La.App. 5 Cir. 12/26/01), 806 So.2d 760, 766.
[22] Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).
[23] The waiver form, which was signed by defendant, does state, "I understand all of the possible legal consequences of pleading guilty, and wish to plead guilty at this time."
[24] State v. Washington, 00-301 (La.App. 5 Cir. 9/26/00), 769 So.2d 1235, writs denied, 00-2971 and 00-3041 (La.9/28/01), 798 So.2d 106 and 798 So.2d 108.
[25] See footnote 7, infra.
[26] Defendant makes no argument on appeal regarding recent ameliorative changes in sentencing provided by 2001 La. Acts 403, although that argument was presented in the district court.
[27] 31,613, p. 46 (La.App. 2 Cir. 4/1/99), 733 So.2d 127, 146, writs denied, 99-1185 (La.10/1/99), 748 So.2d 434 and 00-0477 (La.1/26/01), 781 So.2d 1256,
[28] This offense occurred prior to the enactment of 2001 La. Acts 403, which amended LSA-R.S. 15:529.1.