927 So.2d 484 (2006)
STATE of Louisiana
v.
Tyrone B. SMOTHERS.
No. 05-KA-781.
Court of Appeal of Louisiana, Fifth Circuit.
March 28, 2006.
*485 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Andrea F. Long, Kenneth Bordelon, Assistant District Attorneys, Gretna, Louisiana, For Plaintiff/Appellee.
Holli Herrle-Castillo, Louisiana Appellate Project, Marrero, Louisiana, for Defendant/Appellant.
Tyrone B. Smothers, Cottonport, Louisiana, pro se.
*486 Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY, and WALTER J. ROTHSCHILD.
THOMAS F. DALEY, Judge.
Defendant, Tyrone B. Smothers, appeals his conviction of unauthorized entry of a place of business, a violation of LSA-R.S. 14:62.4. On appeal, his counsel assigns the following Assignments of Error:
1. The trial court erred in allowing hearsay evidence to be admitted, violating Mr. Smothers's Confrontation Clause rights.
2. The trial court erred in failing to grant the motion for post-verdict judgment of acquittal where the evidence was insufficient to uphold the conviction.
Defendant also filed a Pro Se Supplemental Brief, raising three issues: inadmissible testimony, insufficient evidence to convict, and ineffective assistance of counsel.[1]
This Court finds merit to the arguments regarding inadmissible hearsay testimony. Because we reverse and remand for a new trial on these grounds, we do not address the remaining Assignments of Error.

PROCEDURAL HISTORY
On June 15, 2004, the Jefferson Parish District Attorney filed a Bill of Information charging Smothers with unauthorized entry of a place of business. LSA-R.S. 14:62.4. Defendant was arraigned on June 16, 2004, and pled not guilty.
Defendant filed a Motion in Limine to exclude the introduction of any evidence relating to an anonymous tip that lead to the investigation of this incident, citing Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The Motion was argued and denied prior to trial on August 31, 2004. Defendant was tried by a six-member jury on that same day. The jury returned a verdict of guilty as charged.
On November 2, 2004, defendant filed a Motion for Appeal, in proper person. He filed a Pro Se Motion for Post-Verdict Judgment of Acquittal on November 12, 2004. On January 20, 2005, defendant filed Pro Se Motions for New Trial and for Stay of Sentence. On January 28, 2005, defendant filed a counseled "Motion in Post Verdict Judgment of Acquittal, Arrest of Judgment, and Alternatively Motion for New Trial."
On January 28, 2005, the trial court heard arguments on the defense motions and denied all of them. Defendant waived statutory delays, and the court sentenced him that day to three years at hard labor.
Defendant filed a Motion for Appeal on January 31, 2005, and a Motion to Reconsider Sentence on February 16, 2005. The trial court granted the appeal motion on February 1, 2005.
On September 3, 2004, the State filed a habitual offender Bill of Information alleging defendant to be a second felony offender. The State re-filed the bill following sentencing on January 28, 2005. Defendant was advised of the State's allegations, and entered a denial.
On May 20, 2005, defendant withdrew his denial, and entered an admission to the habitual offender bill. The trial court accepted the admission. The judge vacated defendant's original sentence and imposed an enhanced sentence of three years at *487 hard labor, without benefit of probation or suspension of sentence.

FACTS
Detective Devin Pillow of the Jefferson Parish Sheriff's Office testified that he was on routine patrol in the early morning of May 28, 2004, when he was dispatched to the 2200 block of the Westbank Expressway in Harvey on a burglary call. He was notified that a burglar alarm had been activated at the B & G Mart, a convenience store and filling station.
Recalling that the business had been burglarized in the past, Pillow checked the outer perimeter for signs of a break-in. The officer saw no signs of entry to the building, and there were no breaches in the chain-link fence that bordered part of the property. Pillow left the premises.
Pillow testified that he was called to return to B & G Mart again about thirty minutes later, after an anonymous complainant telephoned the sheriff's office to report that two men were attempting to break into the business. The caller described the perpetrators as two black men; one dressed all in black, and the other wearing a white shirt, blue work style pants, and brown work boots.
Deputy Vernon Jones testified that on the morning of May 28, 2004, he was working a security detail at the Travel Lodge Hotel next to B & G Mart. He was sitting in his vehicle in front of the hotel at about 2:00 a.m. when he heard the call regarding the attempted break-in at B & G. He walked to the store and saw a black man wearing a white shirt, blue jeans and brown shoes, running away from the building. Jones called for assistance over his police radio.
Deputy Nick Davidson testified that he received a description of the suspect over his police radio, and he reported to the area where the suspect was seen. He saw defendant running on Brown Street. He stopped defendant and took him back to B & G Mart. Deputy Davidson presented defendant to Deputy Jones, and Deputy Jones identified him as the man whom he had seen running from the business.
Detective Pillow testified that defendant was in custody by the time he made it back to the store. Detective Pillow and other officers secured the area behind the business and called the canine unit for assistance, but were unable to locate a second perpetrator. Detective Pillow testified that he transported defendant to the Jefferson Parish Correctional Center.
Stephanie Pham testified that she and her husband, Than Nguyen, own and operate B & G Mart. The business is enclosed by a six to seven-foot tall chain link fence. She testified that police tried unsuccessfully to contact her three times in the early morning hours of May 28, 2004, to notify her that the store's burglar alarm had sounded. She did not learn of the incident until later that day. Pham said that the burglar alarm is on the inside of the store, but there is a sensor that detects when someone is outside the store trying to break in.
Pham testified that her business closes at 11:00 p.m. She saw the fence at closing time on the night leading up to the incident. There was no hole in the fence at that time. When she returned to the building in the morning, she found there was a hole in the fence. Pham testified that defendant was not employed by B & G Market, and that he did not have permission to be on the premises.

ASSIGNMENT OF ERROR NUMBER ONE
The trial court erred in allowing hearsay evidence to be admitted, violating Mr. Smothers's Confrontation Clause rights.

*488 PRO SE ASSIGNMENT NUMBER ONE

Inadmissible testimony.

DISCUSSION
Defendant argues his confrontation rights were violated when the trial court allowed Deputies Pillow and Jones to testify regarding the anonymous caller's report of a crime in progress. Defendant raised the issue as follows in a pre-trial Motion in Limine:
The defendant, through counsel, moves this Court to prevent the district attorney from referencing or admitting into evidence any information from an anonymous source or concerned citizen that led the police to investigate the incident in question. Any reference to phone calls or comments by a concerned citizen or an anonymous source violates the defendant's Confrontation Clause rights. It is also inadmissible hearsay testimony. Code of Evidence 801, 802; Crawford v. Washington, [541 U.S. 36,] 124 S.Ct. 1354[, 158 L.Ed.2d 177] (2004).
The trial court denied defendant's motion at the commencement of trial on August 31, 2004.
The Sixth Amendment to the United States Constitution and Article I, § 16 of the Louisiana Constitution guarantee an accused in a criminal prosecution the right to confront the witnesses against him. The primary purpose behind this right is to secure for the defendant the opportunity for cross-examination.[2]
Defendant argues that the testimony regarding the anonymous caller's statements amounted to inadmissible hearsay, and that the trial court erred in allowing the testimony. Defendant complains that the clothing descriptions given by the caller constituted the backbone of the State's case, and that his constitutional rights were violated when he was not allowed the opportunity to cross-examine that person.
Hearsay is an oral or written assertion, other than one made by the declarant while testifying at the present trial, offered in evidence to prove the truth of the matter asserted. LSA-C.E. art. 801 C. Hearsay evidence is inadmissible except as specified in the Louisiana Code of Evidence or other legislation. LSA-C.E. art. 802. Such evidence is excluded because the value of the statement rests on the credibility of the out-of-court asserter, who is not subject to cross-examination and other safeguards of reliability.[3]
Defendant complains of the following testimony given by Detective Pillow on direct examination:
Q. And what was the reason that you went back out to that location?
A. We were again dispatched to the same location; an anonymous complainant advised that there was a burglary in progress at the business.
Q. Did you receive any information regarding any suspects?
A. Yes, sir. They had said that there were two black males ...
MS. WIGGINS [defense counsel]:
... I'm going to object, your honor. We need to approach.
THE COURT:
Ask himcome on up.

*489 (Bench Conference)
MS. WIGGINS:
Your honor, I'm gonna object, because the information he's getting ready to give now going to the police report was by uh, an officer Jones, not uh ...
MR. BORDELON [prosecutor]:
. . . No. He said about the anonymous call.
THE COURT:
He can testify to what he was looking for, so I'm going to allow that to occur.
MS. WIGGINS:
Please note my objection.
(End of conference)
Q. Deputy, did you receive any information from the anonymas (sic) caller regarding the suspects?
A. Yes, sir, we did. The anonymas (sic) complainant contacted the 911, the 911 cellular telephone, and advised that two black male suspects were attempting to break into the business.
Q. And were you provided a clothing description of the suspects?
A. Yes sir. They gave us one clothing description as all black: black shirt, black pants, black shoes. And the second description was: black male, white shirt, blue pants, work style pants and brown work boots.
Deputy Jones also gave testimony on direct examination about the anonymous tip:
Q. Okay. Did you receive any information of a possible break in at the B & G Mart?
A. Well, at that time I was sitting in my vehicle and Headquarters put it out as they had two guys was breaking in next door at the BG Mart. Put out that one guy was wearing a white shirt with blue jeans and brown shoes.
At trial, defense counsel objected to Detective Pillow's testimony, but not to Deputy Jones's. Defendant properly raised an objection to the admission of Deputy Jones's testimony, however, through his Motion in Limine.[4]
Traditionally, for purposes of the Confrontation Clause, all hearsay statements were admissible if (1) the declarant was unavailable to testify, and (2) the statement fell under a "firmly rooted hearsay exception" or bore "particularized guarantees of trustworthiness."[5] But the United States Supreme Court has overruled Roberts insofar as it applies to out-of-court statements that are "testimonial" in nature, in Crawford v. Washington.[6] The Crawford Court held that the adequate "indicia of reliability" standard set forth in Roberts is too amorphous to adequately prevent the admission of "core testimonial statements that the Confrontation Clause plainly meant to exclude."[7]
The Crawford Court drew a distinction between testimonial and non-testimonial hearsay and noted that non-testimonial hearsay is admissible where both prongs of Roberts are satisfied, regardless of whether the defendant has had a prior opportunity to cross-examine the declarant. The Court held that testimonial hearsay statements may be admitted as evidence at a criminal trial only when the declarant is unavailable to testify and the defendant *490 has had a prior opportunity to cross-examine the declarant.[8] The Court declined to provide a comprehensive definition of "testimonial," observing that, "[w]hatever else the term covers, it applies . . . to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed."[9]
Neither this Court nor the Louisiana Supreme Court has addressed the question of how to treat 911 emergency calls or other reports to government officials under Crawford. Federal appeals courts have taken differing views on the issue.[10]
We need not reach the issue of whether the anonymous caller's report to police was testimonial or non-testimonial in nature for the purposes of the Confrontation Clause because we find applicable portions of the statement inadmissible on other grounds. The State contends that the officers' testimony was admissible to explain the officers' actions. Police officers may refer to statements made to them by other persons involved in the case in order to explain their actions.[11] Such statements, which also often fall under the res gestae exception, are admissible not to prove the truth of the statement being made, but rather are offered to explain the sequence of events leading to the arrest of the defendant and, as such, are not hearsay.[12]
In State v. Broadway,[13] the Louisiana Supreme Court commented on the admissibility of information received by a police officer:
Admission of information received by a police officer in the investigation of a crime, on the basis that such information explains the officer's presence and conduct and therefore does not constitute hearsay evidence, is an area of widespread abuse. McCormick on Evidence § 249 (E. Cleary 3d ed.1984). Such information frequently has an impermissible hearsay aspect as well as a permissible nonhearsay aspect, and the court in determining admissibility should balance the need of the evidence for the proper purpose against the danger of improper use of the evidence by the jury. Id. The fact that an officer acted on information received in an out-of-court assertion may be relevant to explain his conduct, but this fact should not become a passkey to bring before the jury the substance of the out-of-court information that would otherwise be barred by the hearsay rule. G. Pugh, Louisiana Evidence Law 429-431 (1974).
When an out-of-court statement, such as information received by a police officer during an investigation of a crime, has *491 both an impermissible hearsay aspect and a permissible nonhearsay aspect, the issue of relevancy becomes significantly interrelated with the hearsay issue. If the nonhearsay content of the statement has little or no relevance, then the statement should generally be excluded on both relevance and hearsay grounds. Marginally relevant nonhearsay evidence should not be used as a vehicle to permit the introduction of highly relevant and highly prejudicial hearsay evidence which consists of the substance of an out-of-court assertion that was not made under oath and is not subject to cross-examination at trial.
The anonymous caller's physical descriptions were not needed to show why the officers reported to B & G Mart. The officers' testimony was used to show not only why the officers acted as they did, but more importantly, to bolster the State's case as to identity. The photos, in evidence, that depict the area where defendant was first observed by Deputy Jones is an open parking lot area that appears to be used as a pathway and driveway, openly used by the general public in the area. It is not an isolated spot. The evidence shows that Smothers was not observed or apprehended in close proximity to the hole in the fence.
The issue here is comparable to one addressed by the Louisiana Supreme Court in State v. Arbuthnot, 367 So.2d 296 (1979). In that case, the high court reversed the defendant's conviction on the basis of a police officer's hearsay testimony regarding a non-testifying witness' positive identification of defendant. Although another eyewitness identified the defendant, the Louisiana Supreme Court reasoned that the hearsay description of the non-testifying witness improperly bolstered the State's identification testimony by its only identification witness. Id. at 298-299. In that case, the hearsay identification testimony was used to corroborate substantially the sole eyewitness testimony, whose testimony standing alone may not have been as readily believed by the jury.
In this case, both officers were notified of the offense and the descriptions by a police dispatcher, who assumedly received the information from the anonymous caller. Not only was the officers' testimony hearsay; it was double hearsay. The improper use of hearsay evidence on a material contested issue of the case is reversible error.[14]
The State argues that, even if the testimony at issue was hearsay, its admission was harmless error. The erroneous admission of hearsay testimony may be harmless error, and is therefore subject to harmless error analysis.[15] The test for harmless error is whether the guilty verdict rendered was surely unattributable to the error.[16]
The guilty verdict in this case was not surely unattributable to the erroneous admission of hearsay evidence. The State's case against defendant was circumstantial. It appears that the jury used the physical description given by the tipster to infer that defendant was, at some point, inside the fence and attempting to break into the building. The clothing description was not *492 harmless evidence because it was used to directly link the defendant to the crime.
Accordingly, defendant's conviction and sentence are reversed, and the matter is remanded for a new trial.
REVERSED AND REMANDED FOR NEW TRIAL.
NOTES
[1] In his pro se brief, defendant complains that "over 75%" of the appeal record he received was "altered, fabricated, and missing crucially important testimony." There is no indication that defendant was not sent a photocopy of the entire appeal record. Moreover, defendant offers no support for his claims that witnesses gave perjured testimony.
[2] Davis v. Alaska, 415 U.S. 308, 315, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974); State v. Jackson, 03-883, p. 17 (La.App. 5 Cir. 4/27/04), 880 So.2d 841, 852, writ denied, 04-1399 (La.11/8/04), 885 So.2d 1118.
[3] State v. Wille, 559 So.2d 1321, 1329-1332 (La.1990); State v. Smith, 03-866, p. 5 (La. App. 5 Cir. 11/25/03), 862 So.2d 240, 244, writ denied, 04-0050 (La.5/7/04), 872 So.2d 1078. See also, California v. Green, 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489 (1970).
[4] See, State v. George, 37,492, p. 19 (La.App. 2 Cir. 9/24/03), 855 So.2d 861, 874.
[5] Ohio v. Roberts, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980).
[6] 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).
[7] Crawford, 541 U.S. at 63, 124 S.Ct. at 1371.
[8] Crawford, 541 U.S. at 68, 124 S.Ct. at 1374.
[9] Id.
[10] The United States Supreme Court has recently granted certiorari in two cases in order to address the question of whether statements made in a 911 call and to responding officers are "testimonial" within the meaning of Crawford. See Davis v. Washington, ___ U.S. ___, 126 S.Ct. 547, 163 L.Ed.2d 458 (2005) (No. 05-5224); Hammon v. Indiana, ___ U.S. ___, 126 S.Ct. 552, 163 L.Ed.2d 459 (2005) (No. 05-5705).
[11] State v. Watson, 449 So.2d 1321, 1328 (La. 1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985); State v. Ballay, 99-906, pp. 16-17 (La.App. 5 Cir. 2/29/00), 757 So.2d 115, 127, writ denied, 00-0908 (La.4/20/01), 790 So.2d 13.
[12] State v. Calloway, 324 So.2d 801, 809 (La. 1975).
[13] 96-2659, pp. 7-8 (La.10/19/99), 753 So.2d 801, 808, cert. denied, 529 U.S. 1056, 120 S.Ct. 1562, 146 L.Ed.2d 466 (2000).
[14] Id. at 299.
[15] See, State v. Wille, 559 So.2d at 1331; State v. Hartwell, 03-1214, p. 10 (La.App. 5 Cir. 1/27/04), 866 So.2d 899, 906, writ denied, 04-0448 (La.6/25/04), 876 So.2d 832.
[16] Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993); State v. Morgan, 99-1895, p. 6 (La.6/29/01), 791 So.2d 100, 104. (per curiam).