MARION F. EDWARDS, Judge.
 

 [ gDefendant/appellant, Stanley M. Henry, III (“Henry”), was charged with possession with intent to distribute cocaine, a violation of LSA-R.S. 40:967(A). After a two-day trial, a twelve-member jury unanimously found Henry guilty as charged. His “Motion for New Trial and for Post-Verdict Judgment of Acquittal” was denied, and he was subsequently sentenced to twenty years at hard labor with the first two years to be served without benefit of probation, parole, or suspension of sentence. In addition, the trial judge ordered that Henry’s sentence run concurrently with his sentence for a first offense possession of marijuana, in another case. Henry was given credit for time served.
 

 On the same day, the State filed a multiple bill. After admitting to the allegations in the multiple bill, Henry’s original sentence was vacated, and he was [Ssentenced to thirty years at hard labor without benefit of probation or suspension of sentence and with credit for time served. Henry appeals.
 

 Detective Shane Klein (“Detective Klein”) with the Jefferson Parish Sheriffs Office Narcotics Division testified that he participated as the lead detective in an investigation of Henry at a Quality Inn, along with other officers, including Detective Harold Bourgeois (“Detective Bourgeois”). According to Detective Klein, he learned during the course of his investigation from a confidential informant, who the Jefferson Parish Sheriffs Office used successfully on a regular basis, that a tall black male of medium build with short hair, known on the street as “Shadow,” would be distributing illegal narcotics from his room at the motel. Later in his testimony, Detective Klein identified Henry in court as a “short hair, black individual.”
 

 Detective Klein testified that, during surveillance at the motel, the officers were told by the confidential informant, who was also in the parking lot, that Shadow was standing at the rear exit door of the motel. Detective Klein testified that, after he observed someone matching the description of “Shadow,” he approached, identified himself as a police officer, and explained the nature of the investigation. Detective Klein testified that Henry identified himself by name, not by the street name known to Detective Klein. At that time, Henry was not doing anything suspicious or illegal. Detective Klein testified that Henry informed the officers during questioning that he was staying in room 815 at the motel.
 

 
 *940
 
 According to Detective Klein, when asked if he would consent to a search of his room, Henry did not object. Henry also signed a written consent form allowing the search. According to Detective Klein, Henry informed them that his girlfriend, Robin Shipman (“Shipman”), was in the room. Detective Klein testified that he and Sergeant Todd Vignes entered Henry’s room with the key he provided, and |4found Shipman sleeping in a bed. After Shipman was informed about the investigation, she signed the same consent form as did Henry.
 

 Detective Klein testified that, while in the motel room, he observed a marijuana cigar that subsequently was seized. According to Detective Klein, a K-9 dog was requested to aid in a search of the room. Detective Bourgeois with the Jefferson Parish Sheriffs Office Narcotics Division testified that he participated with Detective Eddie Greer (“Detective Greer”) and his K-9 partner in the investigation and search of Henry’s room with his consent. Detective Bourgeois testified that, during the search, the K-9 alerted to the ironing board that hung on the wall adjacent to the front door of the motel room. After searching the ironing board, a medium-sized black umbrella was found behind it, from which was retrieved a clear plastic bag containing a white powdery substance. Detective Klein testified that he subsequently performed a field test on the large bag of cocaine before turning it over to the evidence custodian on the case, Detective David Canas (“Detective Canas”).
 

 The State and the defense stipulated that the cigar was marijuana and that the white substance was cocaine. Detective Klein also testified that he recovered and seized the following items from the night stand: a digital mail scale commonly used to weigh narcotics; sandwich bags with and without pre-cut corners that are used to package narcotics; a coffee strainer used to separate the loose cocaine and the chunks that need to be cut up; and a razor blade used to cut into fine powder hard pieces of cocaine, as well as a measuring spoon. Detective Klein opined that a digital mail scale is a “strong element” indicating that a suspect has possession with intent to distribute an illegal drug. According to Detective Klein, the combination of all drug paraphernalia seized from the nightstand was consistent with possession with intent to distribute, i.e., sale and distribution of illegal drugs.
 

 | ¡¡Detective Klein testified that the cocaine seized from Henry’s room had a net weight of approximately 28 grams. According to him, 28 grams of cocaine is equal to exactly one ounce of cocaine, which had a street value of approximately $600 to $700 from August of 2007 until March of 2008. Detective Klein testified that someone in possession of one ounce of cocaine with intent to distribute would normally break it down into one-gram amounts. Detective Klein opined that, from August of 2007 until March of 2008, the 28 grams of cocaine had a street value of approximately $1960.
 

 Detective Klein testified that, when Henry was asked about the drugs and the paraphernalia, he immediately explained that everything, including the drugs, belonged to him. Only Henry, the target of the investigation, was arrested because he admitted that he owned the drugs and the paraphernalia. According to Detectives Klein and Canas, Shipman, Henry’s girlfriend, never told him that she owned or possessed any of the items found in room 815. Detective Bourgeois testified that Shipman told him the drugs did not belong to her.
 

 Detective Klein testified that he subsequently interviewed Henry after he was read his rights. In the search incident to
 
 *941
 
 arrest, Henry was found to be in possession of $1,040 in currency. Detective Klein opined that, since Henry stated during the interview that he was unemployed and could not explain where he got the money, the currency found on him was a secondary element that, along with the drug paraphernalia, was consistent with possession with intent to distribute.
 

 Detective Bourgeois testified that he participated in the narcotics investigation and went with the other detectives to the hotel room. After Shipman was taken out of the room, Detective Bourgeois helped execute the search warrant with Detective Greer and the K-9. When the dog alerted to the ironing board, | ^Detective Bourgeois unfolded it and found the black umbrella with the cocaine inside. When he handcuffed Shipman, she told Bourgeois the drugs were not hers.
 

 Shipman testified that, on the date of Henry’s arrest, she was staying in the room at the Quality Inn that Henry obtained for her because she was trying to escape an abusive relationship. According to Shipman, Henry only rented the room for her and did not give her drugs. Ship-man testified that, when Henry did not arrive to pick her up for work on the day of the incident, she awoke to the sound of police officers searching her room and yelling with their guns drawn on her. Ship-man testified that she told the police that the marijuana found next to her bed stand belonged to her. At trial, Shipman admitted that she had approximately 28 grams of cocaine in her brown and cheetah print umbrella hanging by the ironing board and that she was going to sell it. Shipman testified that she never told the police that the cocaine that was found belonged to her because they never asked her. Shipman testified that Henry did not know that there was cocaine in the room.
 

 According to Shipman, she had an extremely bad drug habit and claimed that she could use 28 grams of cocaine in less than a week. Shipman testified that cocaine was easy to purchase on Bourbon Street where she danced under her nickname “Shadow,” which nickname she had since the fifth grade. Shipman claimed that Henry’s nickname is “Truck.” In addition to admitting ownership of the drugs, Shipman admitted that she owned the scale, the sifter, and the bags that she used to “bag it up,” as well as the razor, the little spoon, and the $1,040 in currency that Henry was holding for her. Shipman also admitted that she sold cocaine at work.
 

 17Shipman testified that Henry was never in that hotel room, including on the day of his arrest, and that she never saw him on the date of the incident. According to Shipman, Henry was kept downstairs by the officers.
 

 On appeal, Henry claims that the State presented insufficient evidence to prove that he was guilty and, therefore, the jury’s verdict is contrary to the law and evidence. He argues that the State’s case was based almost entirely on unsworn testimonial hearsay from an anonymous confidential informant. Henry claims that without the information received from the confidential informant the State could not prove that he used the name “Shadow.” He further suggests that the State failed to prove possession because he was not found in possession of or in close proximity to the cocaine. Henry claims that the reason that the State chose to charge him and not Shipman was because the confidential informant only accused Henry. He urges that he was not allowed to inquire about any motive, bias, or interest the confidential informant had in accusing only him because he was not allowed to cross-examine the confidential informant.
 

 
 *942
 
 In order to support a conviction for possession with intent to distribute cocaine, the State must prove that the defendant knowingly and intentionally possessed the drug, and that he did so with the specific intent to distribute it.
 
 [1]
 
 The evidence may be either direct or circumstantial.
 
 [2]
 
 When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 provides that “assuming every fact to be proved that the [circumstantial] evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” This is not a separate test from the Jackson
 
 [3]
 
 standard but rather ^provides a helpful basis for determining the existence of reasonable doubt. Both the direct and circumstantial evidence must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt.
 
 [4]
 

 “Guilty knowledge is a state of mind and need not be proven as fact but rather may be inferred from the circumstances.”
 
 [5]
 
 The element of possession may be proven by showing that the defendant exercised either actual or constructive possession of the cocaine.
 
 [6]
 
 A person who is not in physical possession of a drug may have constructive possession when the drugs are under that person’s dominion or control.
 
 [7]
 
 However, the mere presence of a defendant in the area where a controlled dangerous substance is found or mere association with the person found in possession of the controlled dangerous substance is insufficient to constitute constructive possession.
 
 [8]
 
 A suspect can have constructive possession if he jointly possesses drugs with a companion, and if he willfully and knowingly shares with his companion the right to control the drugs.
 
 [9]
 

 The question of possession hinges on the particular facts of each case.
 
 [10]
 
 Factors to be considered in determining whether the defendant exercised dominion and control sufficient to constitute constructive possession include: (1) the defendant’s knowledge that illegal drugs were in the area, (2) the defendant’s relations with the person found to be in actual possession, (3) the defendant’s access to the area where the drugs were found, (4) evidence of recent drug use by lathe defendant, (5) the existence of paraphernalia, and (6) evidence that the area
 
 *943
 
 was frequented by drug users.
 
 [11]
 

 In the present case, the jury found credible the testimonies of the State’s witnesses that Henry admitted to owning the large amount of crack cocaine found in his constructive possession, i.e., in his hotel room. Henry presented his hotel key to the detectives. Under the facts of this case, regardless of information given by the confidential informant, the jury could have reasonably found that Henry was in constructive possession of the cocaine.
 

 Further, the State proved Henry’s specific intent to distribute the drugs. “Specific criminal intent is ‘that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.’ ” LSA-R.S. 14:10(1). Specific intent is a legal conclusion to be determined by the trier of fact.
 
 [12]
 
 Specific intent to distribute may be inferred from the circumstances of a transaction and from the actions of the defendant.
 
 [13]
 
 A defendant’s intent to distribute may be established by proving circumstances surrounding the defendant’s possession, which gave rise to an inference of such intent. These circumstances include: (1) the defendant’s previous attempts to distribute; (2) whether the drugs are packaged in a form consistent with distribution; (3) the amount of the drugs seized; (4) expert testimony indicating the amount of the drugs recovered is not consistent with personal use; and (5) paraphernalia evidencing an intent to distribute, i.e., scales and plastic bags.
 
 [14]
 
 Drug paraphernalia such as a scale indicates that the defendant possessed with intent to distribute.
 
 [15]
 
 The defendant’s possession of large sums of |incash may also be considered circumstantial evidence of intent to distribute.
 
 [16]
 
 In the absence of these circumstances from which an intent to distribute may be inferred, the mere possession of drugs does not evidence intent to distribute, unless the quantity is so large that no other inference is possible.
 
 [17]
 

 In the present case, Detective Klein testified that a large amount of seized drugs, i.e., a gross weight of 30 grams and a net weight of approximately 28 grams, as well as the combination of drug paraphernalia recovered and seized, was consistent with possession with intent to distribute, not a simple possession. Detective Klein opined that the 28 grams of powdered cocaine package for resale would have a street value of approximately $1,960.
 

 In addition, in the search incident to arrest, Henry was found to be in possession of $1,040 in currency. Detective Klein testified that the currency found on Henry was a secondary element that, along with the drug paraphernalia, was consistent with possession with intent to distribute, especially since Henry was unemployed and could not explain where he got the money. Based on the evidence provided by the State, the jury could have reasonably found that the paraphernalia and amount of drugs found, as well as the currency found on Henry, were consistent with possession with intent to distribute, not with personal use as suggested by Shipman.
 

 
 *944
 
 Stanley next urges that the trial court erred in denying his motion in limine to prevent the introduction of hearsay statements. He argues that he was denied his Sixth Amendment right to confront and cross-examine the confidential informant, claiming that the information provided by the confidential informant was not introduced, as suggested by the State, to explain the course of the police investigation.
 

 |nOn the second day of trial, before the first witness was called, the defense made an oral motion in limine. The defense alleged that the tip received by the police, about a black male named “Shadow” selling drugs at the Quality Inn motel where he subsequently was arrested, was testimonial hearsay under
 
 Crawford v. Wash
 
 ington
 
 [18]
 
 because it was being offered for the truth of the matter asserted. The State claimed that the information was
 
 res gestae
 
 and asserted that the information was being offered to explain the progress of the narcotics investigation and the reason that the police began their surveillance at the particular location and identified Henry as a suspect. The trial judge allowed the State to present the information for the purpose it asserted.
 

 A law enforcement officer may testify about information provided by another individual without it constituting hearsay if it is offered to explain the course of the police investigation and the steps leading to the defendant’s arrest.
 
 [19]
 
 A law enforcement officer’s testimony about statements made to him by other persons involved in the case in order to explain their actions are not hearsay. Instead, these statements often fall under the
 
 res gestae
 
 exception and are admissible, not to prove the truth of the statement being made, but rather to explain the sequence of events leading to the arrest of the defendant.
 
 [20]
 

 However, a law enforcement officer’s testimony may not be used to introduce the content of an informant’s tip because it violates the defendant’s right to confront and cross-examine his accusers.
 
 [21]
 
 In addition, an officer cannot testify that he acted on information obtained during the investigation as an indirect |12method of introducing the substance of out-of-court assertions of the defendant’s guilt that would otherwise be barred by the hearsay rule.
 
 [22]
 

 Even when hearsay evidence has been erroneously admitted, the verdict will not be reversed if the reviewing court, assuming that the damaging potential of the improperly admitted evidence is fully realized, determines that the error was harmless beyond a reasonable doubt.
 
 [23]
 
 Reversal is mandated only when there is a reasonable possibility that the evidence might have contributed to it.
 
 [24]
 
 Confrontation errors are also subject to a harmless error analysis. A guilty verdict may also stand if the reviewing court determines that it is surely unattributable to the confrontation error. Factors to be considered in determining that the verdict was surely unattributable to the error include the importance of the evidence to the State’s case, whether the testimony was cumula
 
 *945
 
 tive, the presence or absence of additional corroboration of the evidence, the extent of cross-examination permitted, and the overall strength of the State’s case.
 
 [25]
 

 In the present case, Detective Klein testified that the confidential informant described the individual, “Shadow,” his street name known to Detective Klein, as a tall black male of medium build with short hair. During his testimony, Detective Klein testified that “the plan was as soon as that [sic] we saw Shadow, we were going to approach him.” When asked, “And who was that individual? Do you see him court [sic]?” Detective Klein identified Henry in court, as a “short hair, black individual,” a description similar to that provided by the confidential informant. In the context of the instant trial, this testimony was used to show not only why the officers acted as they did, but also to bolster the State’s case, since this | ^information was not needed to explain the course of the investigation.
 
 [26]
 
 However, the erroneous admission of this hearsay testimony, as well as any confrontation error was harmless because the State’s case was not based on the confidential informant’s statement and, therefore, it did not contribute to the guilty verdict. Rather, the State presented evidence that Henry constructively possessed cocaine with intent to distribute through witness testimony, i.e., that Henry consented to the search of his room, that he admitted ownership of the drugs and paraphernalia found in the motel room to which he had a key, and that the quantity of drugs found in the room and the unexplained money found on Henry was consistent with intent to distribute.
 
 [27]
 
 This assignment of error is without merit.
 

 In the next assignment of error, Henry claims that the trial court erred in not reading the entirety of LSA-R.S. 14:27 because he was entitled to have the jury instructed with the law pertaining to every aspect of the case arguably supported by the evidence. Specifically, he contends that the trial court erred in not reading subsection “B” of the statute, which contains an example of an attempt to commit a felony. Henry asserts that the example contained in the subsection would have aided the jury because the fact that Henry was found (allegedly) “lying in wait [in the rear parking lot of the motel] to possess cocaine with the intent to distribute” is analogous to the example given in subsection “B” of the statute in which “a person [lies] in wait with a dangerous weapon with the intent to commit a crime.”
 

 “Attempted possession” is a responsive verdict to the statute under which Henry was charged. In its original instructions, the trial judge charged the jury with the law that was applicable to the responsive verdict of attempted possession with intent to distribute, tracking the language of LSA-R.S. 14:27(A) and part of subsection “B” of that statute, which states that “[m]ere preparation to commit a |14crime shall not be sufficient to constitute an attempt.” During the jury charge conference, after reviewing the jury instructions, the defense made no objection. Subsequently, during its deliberations, the jury made the following request of the trial court judge: “We need another definition of number two on the responsive verdicts, guilty of attempted possession with intent to distribute cocaine. Please give an example.”
 

 
 *946
 
 The trial judge and both counsel initially agreed that the jury could not be given a factual example. The State requested that the same jury charge be read to the jury. Defense counsel requested that, in addition, the trial judge read subsection “C” of LSA-R.S. 14:27. Although the State noted that the defense request would give the jury more than what was requested, the trial judge determined that a reading of subsection “C” was appropriate. The trial judge stated, “I’ll tell you that in most of the charges on drug cases, [LSA-R.S. 14:27(C) ] is included in the charge. It was not included in this charge.”
 

 When asked by the trial judge about reading the example given in LSA-R.S. 14:27(B), defense counsel stated that he had no objection, but the State claimed the example in LSA-R.S. 14:27(B) involving a dangerous weapon would be misleading as it had nothing to do with the facts presented in the case. The trial judge determined that he was not going to read the example because the jury might be confused.
 

 The trial judge is required to charge the jury with the law that is applicable to the case.
 
 [28]
 
 This requirement includes all other offenses for which the accused may be convicted by responsive verdict.
 
 [29]
 
 The trial judge’s failure to give a requested jury instruction constitutes reversible error only when there is a 115miscarriage of justice, prejudice to the substantial rights of the accused, or substantial violation of a constitutional or statutory right.
 
 [30]
 
 Erroneous jury instructions are subject to harmless error review.
 
 [31]
 

 LSA-R.S. 14:27(B) states:
 

 (1) Mere preparation to commit a crime shall not be sufficient to constitute an attempt; but lying in wait with a dangerous weapon with the intent to commit a crime, or searching for the intended victim with a dangerous weapon with the intent to commit a crime, shall be sufficient to constitute an attempt to commit the offense intended.
 

 (2) Further, the placing of any combustible or explosive substance in or near any structure, watercraft, movable, or forestland, with the specific intent eventually to set fire to or to damage by explosive substance such structure, watercraft, movable, or forestland, shall be sufficient to constitute an attempt to commit the crime of arson as defined in R.S. 14:51 through 53.
 

 In this case, the facts presented at trial did not include any reference to a dangerous weapon or arson. Therefore, the trial court correctly found that the entirety of subsection “B” of LSA-R.S. 14:27 was not applicable in the present case because the facts did not involve the use of a dangerous weapon or arson. We discern no injustice or prejudice to Henry in the present case.
 

 Based on the previous assignments of error, Henry urges that the trial court erred in denying his motion for new trial and/or motion for post-verdict judgment of acquittal. A post-verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty. La. C.Cr.P. art. 821(B). In light of our dispo
 
 *947
 
 sition of these errors, we find the court did not err in denying the motions.
 

 Henry further urges that the trial court abused its discretion in sentencing him to thirty years. He asserts that his thirty-year, second-felony offender sentence's excessive, even though it is within the statutory guidelines, because it imposes needless suffering upon him, arguing that the trial court neither considered any aggravating or mitigating factors nor gave reasons pursuant to LSA-C.Cr.P. art. 894.1 for the habitual offender sentence imposed.
 

 In the present case, during the multiple offender sentencing hearing, the trial judge informed Henry of the sentencing range of fifteen to sixty years as well as of the thirty-year sentence that he would receive upon acceptance of his admission to being a second felony offender. Henry responded affirmatively that he understood both. The trial judge imposed the thirty-year sentence in conformity with the sentencing agreement. On the same day, Henry signed a “Waiver of Rights—Plea of Guilty Multiple Offender—La. R.S. 15:529.1” form and initialed next to the section in which he was informed of the sentencing range of fifteen to sixty years and of the thirty-year sentence that he would receive.
 

 Under La.C.Cr.P. art. 881.2(A)(2), a defendant cannot appeal or seek review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea. This Court has applied this provision to cases in which a defendant admits to the allegations in a habitual offender bill of information as part of a sentencing agreement.
 
 [32]
 
 When a specific sentence has been agreed to as part of a plea agreement, that sentence, imposed within the agreed upon range, cannot be appealed as excessive and there is no need for the trial judge to give reasons for the sentence pursuant to LSA-C.Cr.P. art. 894.1.
 
 [33]
 

 Since Henry’s sentence was imposed in conformity with the sentencing agreement at the time of the habitual offender admission, and the imposed thirty-[year17 sentence was within the agreed upon range, Henry is barred from challenging his sentence as excessive.
 

 The record was reviewed for errors patent. In the present case, the multiple offender commitment/minute entry and the multiple offender sentencing transcript are inconsistent. The multiple offender commitment/minute entry indicates that Henry was informed of his
 
 Boykin
 

 [34]
 

 rights, rather than his habitual offender rights, pursuant to LSA-R.S. 15:529.1. However, the multiple offender hearing transcript, as well as the “Waiver of Rights-Plea of Guilty Multiple Offender— La. R.S. 15:529.1” form, reveal that Henry was properly informed of his habitual offender rights.
 

 When there is a discrepancy between the transcript and the minutes, the transcript governs. Clerical errors in the commitment should be amended, even though they do not cause prejudice to a defendant’s rights and, therefore, merit reversal.
 
 [35]
 
 Therefore, we remand this mat
 
 *948
 
 ter and order the trial court to correct the multiple offender commitment/minute entry to reflect that Henry was informed of his habitual offender rights before admitting to the allegations.
 

 Additionally, in the present case, the law in effect at the time Henry committed the offense, LSA-R.S. 40:967(B)(4)(b), required that a defendant convicted of possession with intent to distribute cocaine be imprisoned “at hard labor for not less than two years nor more than thirty years, with the first two years of said sentence being without benefit of parole, probation, or suspension of sentence .... ” Here the judge ordered that Henry’s habitual offender sentence be served without benefit of probation or suspension of sentence, as provided in La. R.S. 15:529.1(G), but did not impose the additional restriction of parole on the first |18two years of the sentence as prescribed by the underlying statute. Therefore, Henry’s sentence is illegally lenient. Neither Henry nor the State objected below, and the issue is not raised on appeal. However, an illegally lenient sentence can be noticed or recognized by the appellate court
 
 sua sponte
 
 without the issue being raised by the State in the trial court or on appeal.
 
 [36]
 

 Pursuant to La. R.S. 15:301.1, a statute’s requirement that a defendant be sentenced without benefit of parole, probation, or suspension of sentence is self-activating. Therefore, this error patent requires no corrective action to impose the restriction on Henry’s right to parole.
 

 For the foregoing reasons, the conviction and sentence are affirmed. The matter is remanded to the trial court to amend the multiple offender commitment/minute entry as stated above.
 

 AFFIRMED.
 

 [1]
 

 . La. R.S. 40:967(A)(2);
 
 State v. Fisher,
 
 03-326 (La.App. 5 Cir. 7/29/03), 852 So.2d 1075, 1079,
 
 writ denied,
 
 03-2545 (La.5/14/04), 872 So.2d 510;
 
 State v. Robinson,
 
 02-1253, p. 4 (La.App. 5 Cir. 4/8/03), 846 So.2d 76, 80,
 
 writ denied,
 
 03-1361 (La.11/26/03), 860 So.2d 1131.
 

 [2]
 

 .
 
 State v. Manson,
 
 01-159 (La.App. 5 Cir. 6/27/01), 791 So.2d 749, 761,
 
 cert. denied,
 
 01-2269 (La.9/20/02), 825 So.2d 1156.
 

 [3]
 

 .
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).
 

 [4]
 

 .
 
 State v. Brown,
 
 03-581, p. 10 (La.App. 5 Cir. 11/12/03), 861 So.2d 644, 651,
 
 writs denied,
 
 03-3407 (La.4/2/04), 869 So.2d 875 and 04-49 (La.4/2/04), 869 So.2d 877.
 

 [5]
 

 .
 
 State v. Flagg,
 
 01-65 (La.App. 5 Cir. 7/30/01), 792 So.2d 133, 140,
 
 writ denied,
 
 01-2534 (La.9/20/02), 825 So.2d 1159.
 

 [6]
 

 .
 
 State v. Walker,
 
 03-188 (La.App. 5 Cir. 7/29/03), 853 So.2d 61, 65,
 
 writ denied,
 
 03-2343 (La.2/6/04), 865 So.2d 738.
 

 [7]
 

 .
 
 Id.
 

 [8]
 

 .
 
 Id.
 
 (citing
 
 State v. Gentras,
 
 98-1095 (La. App. 5 Cir. 3/30/99), 733 So.2d 113,
 
 writ denied,
 
 99-1302 (La.10/15/99), 748 So.2d 464).
 

 [9]
 

 .
 
 State v. Hollingsworth,
 
 07-691 (La.App. 5 Cir. 12/27/07), 975 So.2d 31.
 

 [10]
 

 .
 
 State v. Lewis,
 
 04-1074 (La.App. 5 Cir. 10/6/05), 916 So.2d 294,
 
 writ denied,
 
 05-2382 (La.3/31/06), 925 So.2d 1257.
 

 [11]
 

 .
 
 Id.
 

 [12]
 

 .
 
 State v. Robinson,
 
 02-1253 (4/8/03), 846 So.2d 76.
 

 [13]
 

 .
 
 Id.
 

 [14]
 

 .
 
 Id.
 

 [15]
 

 .
 
 See, State v. Trahan,
 
 425 So.2d 1222 (La.1983).
 

 [16]
 

 .
 
 State ex rel. B.L.,
 
 02-923 (La.App. 5 Cir. 1/28/03), 839 So.2d 246.
 

 [17]
 

 .
 
 Id.
 

 [18]
 

 . 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).
 

 [19]
 

 .
 
 State v. Addison,
 
 05-378 (La.App. 5 Cir. 12/27/05), 920 So.2d 884,
 
 writ denied,
 
 06-1087 (La.11/9/06), 941 So.2d 36.
 

 [20]
 

 .
 
 State v. Smothers,
 
 05-781, p. 7 (La.App. 5 Cir. 3/28/06), 927 So.2d 484.
 

 [21]
 

 .
 
 State v. Addison,
 
 supra.
 

 [22]
 

 .
 
 Id.
 

 [23]
 

 .
 
 Id.
 

 [24]
 

 .
 
 Id.
 

 [25]
 

 .
 
 Id.
 

 [26]
 

 .
 
 Compare, State v. Smothers,
 
 05-781 (La. App. 5 Cir. 3/38/06), 927 So.2d 484.
 

 [27]
 

 .
 
 Compare, State v. Addison,
 
 supra.
 

 [28]
 

 . La.C.Cr.P. art. 802(1);
 
 State v. Lawson,
 
 08-123 (La.App. 5 Cir. 11/12/08), 1 So.3d 516, 527.
 

 [29]
 

 .
 
 State v. Simmons,
 
 01-293 (La.5/14/02), 817 So.2d 16 (citing
 
 State v. Wilson,
 
 315 So.2d 646, 649 (La.1975)).
 

 [30]
 

 .
 
 State v. Lawson, supra.
 

 [31]
 

 .
 
 State v. Eskano,
 
 00-101 (La.App. 5 Cir. 1/30/01), 779 So.2d 148.
 

 [32]
 

 .
 
 State v. Bolton,
 
 02-1034 (La.App. 5 Cir. 3/11/03), 844 So.2d 135,
 
 writ denied,
 
 03-1159 (La. 11/14/03), 858 So.2d 417.
 

 [33]
 

 .
 
 State v. Martin,
 
 02-897 (La.App. 5 Cir. 1/28/03), 839 So.2d 256.
 

 [34]
 

 .
 
 Boykin v. Alabama,
 
 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274, 279 (1969).
 

 [35]
 

 .
 
 State v. Delagardelle,
 
 06-898 (La.App. 5 Cir. 4/11/07), 957 So.2d 825,
 
 writ denied,
 
 07-1067 (La.11/21/07), 967 So.2d 1154.
 

 [36]
 

 .
 
 See, State v. Converse,
 
 03-711 (La.App. 5 Cir. 12/30/03), 864 So.2d 803,
 
 writ denied,
 
 04-195 (La.6/4/04), 876 So.2d 74.