STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-234

STATE OF LOUISIANA

VERSUS

JERRY H. CREDEUR, JR.

\*\*\*\*\*\*\*\*\*\*
APPEAL FROM THE
TWENTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF LASALLE, DOCKET NO. 83,792
HONORABLE J. CHRISTOPHER PETERS, PRESIDING
\*\*\*\*\*\*\*\*\*\*

SYLVIA R. COOKS
JUDGE
\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, James T. Genovese, and Phyllis M. Keaty, Judges.

**REVERSED, RENDERED, AND REMANDED.**

Eugene P. Cicardo, Jr.
P.O. Box 1128
Alexandria, LA 71309-1128
(318) 445-2097
COUNSEL FOR DEFENDANT/APPELLANT:
        Jerry H. Credeur, Jr.

Walter E. Dorroh, Jr., Assistant District Attorney
Twenty-Eighth Judicial District Court, Parish of LaSalle
P.O. Box 1940
Jena, LA 71342
(318) 992-8282
COUNSEL FOR APPELLEE:
        State of Louisiana

**COOKS, Judge.**

In this criminal case, Defendant appeals his conviction and fifteen-year sentence for possession of methamphetamine with intent to distribute. We find that the evidence was insufficient to prove Defendant possessed the specific intent to distribute methamphetamine; however we do find Defendant guilty of possession of methamphetamine. Therefore, we find Defendant guilty of possession of methamphetamine, and remand the case to the trial court for sentencing on the possession conviction.

## FACTS AND PROCEDURAL HISTORY

Defendant, Jerry H. Credeur, Jr., was arrested at a residence where police believed illegal drugs were being sold. At the time, he claimed ownership of a glass pipe, some baggies, and a lighter. These items were all located in a room of the residence. Also found in the room were scales, baggies, pipes, money, a cell phone, .05 grams of methamphetamine, and a surveillance video set-up displaying the driveway.

Defendant was eventually charged by bill of information with one count of possession of methamphetamine, Schedule II, with intent to distribute, in violation of La.R.S. 40:967(A)(1). A jury trial commenced, at the conclusion of which he was found guilty as charged. A presentence investigation report was ordered. Defendant was sentenced to fifteen years at hard labor, with credit for time served. He filed a "Motion and Order for Reconsideration of Sentence." A hearing was held, following which Defendant's motion was denied.

Defendant appeals his conviction and sentence, alleging three assignments of error: 1) the trial court erred when it did not allow Defendant to confront witnesses who violated the order of sequestration; 2) the evidence was not sufficient to sustain a verdict of possession with intent to distribute; and 3) the sentence was excessive in Defendant's case.

# ASSIGNMENT OF ERROR NUMBER 2

We elect to address Defendant's second assignment of error first. In this assignment of error, Defendant argues, although he possessed methamphetamine, the evidence presented by the State failed to prove beyond a reasonable doubt the *requisite intent* to distribute the drug; therefore, the evidence was insufficient to support the verdict.

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979*); State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (citing *State v. Richardson,* 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

Furthermore, in *State v. Ortiz*, 96-1609, p. 12 (La. 10/21/97), 701 So.2d 922, 930, *cert. denied,* 524 U.S. 943, 118 S.Ct. 2352 (1998), the Louisiana Supreme Court stated:

> When circumstantial evidence is used to prove the commission of the offense, La.R.S. 15:438 requires that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." This is not a separate test to be applied when circumstantial evidence forms the basis of a conviction; all evidence, both direct and circumstantial must be sufficient to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. *State v. Porretto*, 468 So.2d 1142 (La.1985).

Defendant was convicted of possession with intent to distribute methamphetamine, a violation of La.R.S. 40:967(A)(1), which provides, in pertinent part, that it is "unlawful for any person knowingly or intentionally: (1) To

2

produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture, distribute or dispense, a controlled dangerous substance or controlled substance analogue classified in Schedule II[.]" Intent to distribute is a specific intent crime, and it is well settled jurisprudence in Louisiana that intent to distribute may be inferred from the circumstances. *State v. Smith*, 03-917 (La.App. 1 Cir. 12/31/03), 868 So.2d 794.

At trial, Brian Ty Book, a parole officer with the Louisiana Department of Corrections, testified that on the afternoon of July 16, 2007, he was mowing his lawn when he saw a white truck pull up to the house diagonal from his house. He did not recognize the man who exited the truck, but he called in the license plate because he had been suspicious of drug activity at the house. He explained that over the past several weeks he had noticed several vehicles arrive and then leave within ten to fifteen minutes. Officer Book was told the truck was registered to Harold Steven Foster. He ran the name through his police computer and learned that Foster was on probation. He contacted Foster's probation officer, Jean St. Pierre, who requested that Officer Book make contact with Foster because she suspected he was having problems with drugs. Officer Book first contacted Urania Police Chief, Wayne Corley, who advised him that there had been complaints about drug activity out of that residence.

Officer Book approached the house at the carport door. He knocked, and, through the glass door, he saw Defendant exit a room and enter the kitchen. The officer asked if "Stevie" was there. Defendant responded that he was there. The officer identified himself and asked to see Foster. He stated that Defendant then looked around nervously and acted a little disassociated. Because he acted suspicious and as if he might flee, the officer pulled his weapon and commanded him to open the door. For officer safety, he placed Defendant in handcuffs. The officer called loudly to see if there was anyone else in the house. At that time, Lisa

Cotton, also known as Melissa Cline (hereafter Cotton/Cline), came out of the same room Defendant came from. After securing her, Officer Book checked to see that there was no one else in the house.

When he looked into the room from which both Cotton/Cline and Defendant had come out of, he saw on the couch a glass pipe, which he testified was "commonly used in ingestion of cocaine or methamphetamine." He also saw a set of small, digital scales, several small, clear plastic baggies, and a butane lighter. After the officer *Mirandized* the two persons, he asked who owned the paraphernalia. He testified that Defendant said "anything in there was mine."

While Cotton/Cline lived at the house, Defendant did not. Officer Book testified that he had never seen Defendant at the house before. When he first saw him, Defendant was not carrying anything that he could see. At this point, the matter was turned over to Deputy Scott McClendon, an officer with LaSalle Parish Sheriff's Office. The deputy testified that the owner of the residence, Lloyd Gough, was contacted at work and immediately came home. When Gough arrived, he was advised of the situation, and he gave consent to search the residence.

Deputy McClendon, with the help of Officer Michael Barber, searched the room in the residence and inventoried the items located within. At trial, Deputy McClendon described the items. Besides the items already described by Officer Book, he found eight zippered plastic bags which contained smoking devices, baggies, sets of scales, measuring spoons, a Nokia cell phone, a small black phone book with the name "Jerry Credeur" written on the front cover, cash in the amount of two hundred and sixty dollars, consisting of two one hundred dollar bills and three twenty dollar bills, and a small clear baggie with a small amount of powder. Also in the room were a video surveillance camera and a TV showing the driveway of the house. Deputy McClendon testified that in his experience as an officer who has dealt with narcotics offenses, these items are consistent with drug distribution.

4

Alex King, a forensic chemist with North Louisiana Crime Laboratory, determined that the substance found in the baggie was methamphetamine. He stated that there was approximately .05 grams of powder in the baggie.

Gough testified he was completely unaware that drugs were being dealt out of his house. He said that he was seldom home, and that Cotton/Cline was living in the house at the time. Gough described the room that contained the TV and couch. He stated that he had seen Defendant at the house on a few occasions but did not know him very well.

Upon being booked at the LaSalle Parish Sheriff's Office, Defendant tested positive for methamphetamine through a urine sample. Defendant does not refute that he was in possession of methamphetamine at the time he was arrested. He does argue, however, that the State failed to prove that he possessed methamphetamine with the intent to distribute.

Factors that may be considered when determining whether a defendant had the specific intent to distribute are:

> (1) the defendant's previous attempts to distribute; (2) whether the drugs are packaged in a form consistent with distribution; (3) the amount of the drugs seized; (4) expert testimony indicating the amount of the drugs recovered is not consistent with personal use; and (5) paraphernalia evidencing an intent to distribute, i.e., scales and plastic bags. Drug paraphernalia such as a scale indicates that the defendant possessed with intent to distribute. The defendant's possession of large sums of cash may also be considered circumstantial evidence of intent to distribute. In the absence of these circumstances from which an intent to distribute may be inferred, the mere possession of drugs does not evidence intent to distribute, unless the quantity is so large that no other inference is possible.

*State v. Henry*, 08-658, pp. 9-10 (La.App. 5 Cir. 10/27/09), 27 So.3d 935, 943, *writ denied*, 09-2485 (La. 4/23/10), 34 So.3d 269 (footnotes omitted).

In *Henry*, the defendant, who was convicted of possession of cocaine with intent to distribute, argued on appeal that the evidence was insufficient to establish intent to distribute. An informant had alerted the police that the defendant was

5

selling cocaine out of his motel room. The police made contact with Henry, and he consented to a search of the room. There, along with Henry's girlfriend, the police found a digital mail scale, sandwich bags with and without pre-cut corners of the kind used to package narcotics, razor blades, small measuring spoons, approximately 28 grams of cocaine, and over one thousand dollars in currency. Affirming the conviction for distribution, the fifth circuit noted:

> In the present case, Detective Klein testified that a large amount of seized drugs, i.e., a gross weight of 30 grams and a net weight of approximately 28 grams, as well as the combination of drug paraphernalia recovered and seized, was consistent with possession with intent to distribute, not a simple possession. Detective Klein opined that the 28 grams of powdered cocaine package for resale would have a street value of approximately $1,960.
>
> In addition, in the search incident to arrest, Henry was found to be in possession of $1,040 in currency. Detective Klein testified that the currency found on Henry was a secondary element that, along with the drug paraphernalia, was consistent with possession with intent to distribute, especially since Henry was unemployed and could not explain where he got the money. Based on the evidence provided by the State, the jury could have reasonably found that the paraphernalia and amount of drugs found, as well as the currency found on Henry, were consistent with possession with intent to distribute, not with personal use as suggested by *Shipman*.

*Id.* at 943.

Similar to *Henry*, there were numerous items consistent with distribution— money, baggies, measuring spoons, and scales. There was also a small phone book found in the room which contained Defendant's name on the outside of the book. There was testimony that the book was a drug dealer's book. A review of the book shows names and phone numbers. There were also various lists in the book indicating monthly living expenses, car rental costs and phone numbers of car rental dealerships, doodles, and lists of monies seemingly owed by various people. There were also on a few pages in the book notations of first names coupled with a fraction--1/8, 2/8, etc.

However, unlike in *Henry*, where a large amount of drugs were found,

Defendant was in possession of only a small amount of methamphetamine (.05 grams), an amount more consistent with personal use of the drug as opposed to selling the drug. Defendant also argues he was not in possession of an extremely large amount of currency (over $1,000.00) as in *Henry*.

Defendant further argues there was no evidence of previous attempts to distribute drugs. Although, the State claims in brief that Defendant had a prior conviction of possession of methamphetamine, a review of the trial record shows that evidence of a prior conviction was never offered at trial. Defendant points out that he did not live at the house where all the items were found. While he is credited with stating that "anything in there is mine," he points out that Officer Book asked him whose stuff was in the room after seeing in plain view a glass pipe, some baggies, a scale, and a lighter. All of the remaining items were found later by Deputy McClendon, tucked away in zippered bags in the closet. Accordingly, Defendant argues that while he told the parole officer that at least the glass pipe which contained residue found on the couch, a few baggies, a scale, and a lighter were his, he did not confess to owning all the rest of the items including the baggie containing the small amount of methamphetamine found in zippered bags in the closet. In brief, Defendant notes that on cross-examination, Officer Book "admitted that in his report that he did not quote the defendant as saying '*He stated anything in there is mine.*' Officer Book admitted he could have remembered *inaccurately* because it happened two years ago.

In a case where this court found the evidence of intent to distribute "woefully insufficient," this court noted:

> A reviewing court may not disregard its duty to consider the constitutional sufficiency of the evidence simply because the record contains *some* evidence that tends to support each fact necessary to support the crime. It cannot consider only the evidence most favorable to the prosecution. Rather, it must consider the record as a *whole*, just as a rational fact finder would. If there could be disagreement between rational fact finders on the interpretation of the evidence, its view of

7

*all* the evidence most favorable to the prosecution must be adopted. *State v. Mussal*, 523 So.2d 1305 (La.1988).

*State v. Perkins*, 97-1119, p.19 (La.App. 3 Cir. 6/17/98), 716 So.2d 120, 130.

In *Perkins*, the defendant and two other men were sitting in an empty parking lot in front of a bar the police were about to raid on suspicion of not having a proper liquor license. The defendant and one other man fled the car upon seeing the police officers. In the vehicle were four zip-lock baggies full of marijuana. It appeared that before the men raced away, they were preparing joints. This court noted:

> Louisiana jurisprudence is clear that in order to convict a person on the basis of constructive possession, something more than mere presence in the area where the drugs are found or mere association with the person in actual custody of drugs must be shown. *State v. Williams*, 546 So.2d 963 (La.App. 3 Cir.1989), *citing State v. Alford*, 323 So.2d 788 (La.1975). Several cases have listed certain factors which may be considered in determining whether a defendant is in constructive possession of narcotics. These factors include the defendant's knowledge that illegal drugs are in the area; the defendant's relationship with the person who has physical possession of the drugs; the defendant's access to the area where the drugs were found; evidence of recent drug use by the defendant; the defendant's physical proximity to the drugs; and evidence that the residence was frequented by drug users. *See State v. King*, 554 So.2d 254 (La.App. 3 Cir.1989).
>
> . . . .
>
> In this case, the evidence is woefully insufficient to prove that the defendant intended to distribute marijuana. Only one of the enumerated factors was present--the existence of five (5) zip-lock bags containing green vegetable material which was determined to be marijuana. However, there was no testimony that such packaging was inconsistent with personal use only, particularly considering the presence of three individuals in the car who could have shared the marijuana among themselves.
>
> . . . .
>
> There was no evidence that the defendant distributed or attempted to distribute the marijuana he possessed the night of his arrest or that he had ever distributed or attempted to distribute any controlled dangerous substances in the past.

*Id.* at 129-30.

In the current case, we find the evidence was insufficient to prove that Defendant was distributing drugs out of the house in question. The owner of the house testified that he did not know Defendant well and that he had only seen him on a few previous occasions when Defendant visited Cotton/Cline. It is difficult to contend that all the pipes, the scales, the measuring spoons, plastic baggies, surveillance camera covering the residence's driveway, were present in the house without Gough having seen Defendant more often if he was dealing drugs out of the house on a regular basis. Officer Book testified that he had noticed unusual activity at the house, numerous vehicles arriving and leaving quickly over the past several weeks, but *had not seen Defendant before*. Chief Corley testified that he lived in the neighborhood and had been watching the house for several weeks because of suspected drug activity, yet he did not know who Defendant was prior to this incident.

While Defendant admitted some items were his, there was no testimony regarding fingerprints on the scales, pipes, baggies, surveillance equipment, or money found in the room. Nor was it established whose cell phone was found in one of the bags. There was no testimony establishing Defendant had a history of drug sales. While Deputy McClendon testified that the address book was a drug dealer's book, he admitted he did not attempt to ascertain whether the names in the book were of drug purchasers. Lastly, the amount of methamphetamine found at the time of Defendant's arrest was a miniscule amount, and described by all parties as "residue." Thus, even when viewing the evidence in the light most favorable to the prosecution, it is a substantial leap to reach the conclusion that Defendant was distributing drugs on the date and at the time in question. The evidence was insufficient to prove Defendant had the intent to distribute beyond a reasonable doubt. As noted in *Perkins*, 716 So.2d at 130, "[a] reviewing court may not disregard its duty to consider the constitutional sufficiency of the evidence simply

9

because the record contains some evidence that tends to support each fact necessary to support the crime." Defendant's conviction is based largely on circumstantial evidence and the State failed to exclude the reasonable hypotheses that Defendant was purchasing or had purchased and smoked the drug. His admission that "anything" belonged to him did not include "everything" in the closet. Thus, we find Defendant innocent of the charge of distribution.

Therefore, we vacate Defendant's conviction and sentence for possession with intent to distribute a controlled dangerous drug, Schedule II. The record clearly establishes Defendant admitted to and does not refute that he was in possession of methamphetamine; accordingly, we find Defendant guilty of possession of a controlled dangerous drug, Schedule II, and remand the matter to the trial court for sentencing on the lesser included offense.

Defendant's assignment of error alleging excessive sentence is rendered moot. Further, Defendant's assignment of error complaining about alleged sequestration violations and his right to confront the witnesses against him was infringed upon has also been rendered moot, or at the very least is harmless based on our decision to reverse his conviction for distribution. The record overwhelmingly established Defendant was sufficient to guilty of the lessor included offense of possession of methamphetamine – a fact to which he confessed at the time of his arrest and did not seriously dispute at trial or on appeal.

### DECREE

For the foregoing reasons, we reverse the conviction of possession with intent to distribute, vacate the sentence, find Defendant guilty of possession of methamphetamine, and remand the matter to the trial court for resentencing. Accordingly, the remaining assignments of error are rendered moot or lack merit in light of our ruling.

**REVERSED, RENDERED, AND REMANDED.**

10